UNITED STATES of America ex rel. Richard J. MANDUCHI

v.

Jack TRACY, Warden, Lancaster County Prison, Appellant.

No. 15088.

United States Court of Appeals Third Circuit.

Submitted April 20, 1965.

Decided Aug. 19, 1965.

Certiorari Denied Dec. 6, 1965.

See 86 S.Ct. 390.

Wilson Bucher, Dist. Atty., Lancaster County, Columbia, Pa., for appellant.

Michael J. Rotko and Donald J. Goldberg, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, STALEY and SMITH, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellee had been convicted of the misdemeanor of bookmaking in the Commonwealth of Pennsylvania Court of Quarter Sessions of Lancaster County. The conviction was affirmed on appeal and while serving the prison term of his sentence he instituted this habeas corpus proceeding in the district court. It was there conceded by respondent-appellant that on the Fourteenth Amendment Due Process Clause question here involved petitioner-appellee's state remedies had been effectively exhausted.

In the state trial, crucial evidence obtained as a result of searching appellee's apartment was admitted into evidence. Appellee's contention at the trial and in this proceeding has been and is that the search was unreasonable and therefore the mentioned evidence was inadmissible.

There is no dispute as to just what the facts themselves were. Around noon of March 1, 1961, Lancaster city detectives, having obtained a search warrant authorizing them to search appellee's apartment for bookmaking paraphernalia, went to that apartment. At the trial Detective Williams testified substantially that he, carrying a sledge hammer, approached the apartment main door. He tapped on the door twice, waited several seconds for the door to be opened, "turned the knob and the door was locked; * * *", heard "a little scuffling noise like someone moving around", and when he "couldn't get in * * * [he] stepped back and hit it twice with a sledge hammer and the door flew open." About the same time other officers broke through another door to the apartment by using a section of a telephone pole. Entering the apartment Detective Williams saw Manduchi put a piece of paper in his mouth and swallow it. Hidden in the apartment the officers found bet data sheets, easily destroyable thin paper and marked racing information material. In the course of the next hour while the police were still present there were approximately eleven incom-

ing telephone calls, a number of them asking for appellee and all of them placing bets on that day's races. The entrance door to the apartment had metal reinforcement not quite an eighth of an inch thick covering the entire inside of the door. The latter also had an extra heavy bolt latch on it under the ordinary lock. The numbers for the telephone and its extension had been removed from those instruments.

The district judge, holding that the search was unreasonable under the circumstances, allowed the writ and stayed its execution to give the Commonwealth the opportunity to appeal or to initiate proceedings for the retrial of petitioner.

Williams and his fellow officers when they arrived at the Manduchi apartment were proceeding properly under their search warrant. And Williams in knocking on the door, as he said he did, unquestionably acted lawfully. Immediately thereafter, he tried the door, found it apparently locked, heard a scuffling noise and forced the door open with his sledge hammer. Neither he nor any of the other officers announced their presence and purpose. The interval between Williams tapping on the door and breaking it open was a few seconds. All of this gives us the sole question on this appeal. Was the stated entrance reasonable under the then present circumstances as shown by the record? On appeal the Superior Court of Pennsylvania held that it was, saying:

"We find no Pennsylvania appellate cases which discuss or determine the circumstances under which police officers armed with a warrant may break into a private dwelling place without first announcing their purpose and giving the occupants a chance to admit them. Each case depends upon its own circumstances. (2) The circumstances surrounding the search and seizure in this case are not such as to make it unreasonable as a matter of law."

Commonwealth v. Manduchi, 203 Pa.Super. 373, 375, 198 A.2d 613, 614 (1964), Pet. to Pa.Sp.Ct. for allowance of appeal den. No. 120–A, Misc.Docket No. 13, May 11, 1964.

In a comparable situation the leading and here controlling case, Ker v. State of California, 374 U.S. 23, 33–34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1962) held:

"We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of this Court applying that Amendment. Findings of reasonableness, of course, are respected only insofar as consistent with federal constitutional guarantees. As we have stated above and in other cases involving federal constitutional rights, findings of state courts are by no means insulated against examination here."

■ The district court, having Ker very much in mind, properly concluded that the search warrant per se did not insulate the law enforcement representatives from the necessity of reasonably conducting their search. Under the Ker directive the court made its own examination of the facts and decided that the search when it was made was unreasonable.

In Ker there was also a "breaking" by the police in order to gain entrance to the Ker premises. That "breaking" was technical in as much as it was achieved by means of a key. Nevertheless the Court assumed (p. 38, 83 S.Ct. p. 1632) " * * * that such breaking is permissible in executing an arrest under certain circumstances."

■■ In the appeal before us there was no announcement from the police of who they were and why they sought entrance. Federal law requires notice of authority and purpose and refusal of admittance prior to breaking open such a door as that with which we are concerned. 18 U.S.C. § 3109. Testing the validity of the present arrest is a matter of state law,

Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). The Pennsylvania state courts, as we have seen, have determined that in this instance the breaking without prior announcement of identity and purpose was not unreasonable as a matter of law and so affirmed the conviction. We therefore must examine the facts as they existed at the time of the entry and determine for ourselves whether the action of the police in breaking and entering without the required announcement and refusal of admission was reasonable under the circumstances.

In Ker, 374 U.S. p. 35, 83 S.Ct. p. 1630 as Mr. Justice Clark found in the Court opinion, "The information within the knowledge of the officers at the time they arrived at the Kers' apartment, as California's courts specifically found, clearly furnished grounds for a reasonable belief that petitioner George Ker had committed and was committing the offense of possession of marijuana." Commenting on the information the officers had as they entered the Ker residence the Court said p. 36, 83 S.Ct. p. 1631: "To say that this coincidence of information was sufficient to support a reasonable belief of the officers that Ker was illegally in possession of marijuana is to indulge in understatement." And the Court on p. 38, 83 S.Ct. p. 1632 went on to hold:

"Since the petitioners' federal constitutional protection from unreasonable searches and seizures by police officers is here to be determined by whether the search was incident to a lawful arrest, we are warranted in examining that arrest to determine whether, notwithstanding its legality under state law, the method of entering the home may offend federal constitutional standards of reasonableness and therefore vitiate the legality of an accompanying search. We find no such offensiveness on the facts here."

The Court examined the disclosed facts of the Ker entry and decided:

"Here justification for the officers' failure to give notice is uniquely

present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police. We therefore hold that in the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment."

In the search of the Manduchi apartment we are confined to what the trial record shows the police knew regarding Manduchi at that time. What they found as a result of the search is inadmissible as evidence if the circumstances revealed in the record to be within the knowledge of the police as they broke in the door did not render that breaking permissible.

The police did have a warrant which authorized them to search for bookmaking equipment. None of the information on which this was based was offered at the trial except perhaps in the testimony of Detective Rose. He said that the morning of the raid he was in a particular variety store. As to this there were the following questions and answers:

"THE COURT: You went into the store. All right, then what happened?

WITNESS: I'd like to explain. I was in the store on a number of occasions prior to March the first. We received a complaint on February 15th that a suspect was entering a store and making bets—

MR. BROWN: (interposing) Now, Your Honor—

THE COURT: That isn't it. What I asked you—you went into the store. Now, what happened there?

MR. BROWN: Now, we have to object to this, Your Honor.

THE COURT: That phase—of course the objection is sustained.

I'm just asking: You were in the store, that is what I want to know?

WITNESS: That is correct. I went into the store.

THE COURT: Then what happened while you were in the store?

WITNESS: While I was in the store Mr. Steffy came into the store and he walked over to the telephone and he dialed a number which was Express—

\*    \*    \*    \*    \*    \*

Q. Now, you say that this man Steffy made a telephone call?

A. Yes, Mr. Steffy was partially blind and at times he wore glasses and at times he wore dark glasses, and when he entered the store he walked to the telephone to make a call. When I saw him walking in the store I—his back was towards me so I walked up in back of him and when I saw him dial '2–38042' I immediately went to the rear room of the store and radioed by walkie talkie to the station. As soon as I heard him saying 'Red'—'Steffy'. And after I radioed the station I came back to the phone and stood in back of Mr. Steffy for approximately two to three minutes. I didn't get too close to him at the time. He stopped talking for an instant and then I walked up to him, and he looked into the telephone and hung it up on the receiver very quietly and started to walk out. \* \* \*"

Rose was cross-examined regarding the complaint he had mentioned:

"Q. Well, was the complaint directing you to go to the store?

A. The complainant stated that there was a man came in every day—gave a description of him—as making calls. And they thought it was horse race bets."

Appellant asserts that prior to knocking on Manduchi's door the Lancaster police had information that (1) Manduchi was a bookmaker and receiving bets on the day of the raid; (2) that bookmakers make memoranda of bets many times on flash paper which is easily destroyed; (3) that Manduchi had a telephone or telephones in his apartment over which he received bets; (4) that telephone wires can be quickly torn out or cut thus destroying evidence of incoming calls; (5) that the police had knocked at the door before entering; (6) that the police had heard a scuffling sound inside.

We have seen the evidence which was actually before the court and jury as to Manduchi being a bookmaker and receiving bets on the raid day. We are not unduly disturbed regarding the hearsay source of this for as stated in Ker, 374 U.S. p. 36, 83 S.Ct. p. 1630, "That this information was hearsay does not destroy its role in establishing probable cause." Entirely aside from that it was very little indeed. There was no evidence offered in support of (2) as of the time of the raid. We have already noted that there was some evidence that Manduchi had a telephone at the time of the entry. There is nothing in the pre-raid record to substantiate the proposition of telephone wires being put out of commission quickly to eliminate incoming calls. There is testimony that Williams did knock at the door and did hear a scuffling sound prior to entering.

The issue confronting us for decision is truly rather close. But just as truly the evidence that was introduced at the Manduchi trial was not of the urgency that called for the immediate action of forcing entry without making known who was at the door and their purpose and of allowing the occupants the opportunity of opening the door peaceably. There may possibly be available background evidence that perhaps might indicate exigent circumstances which are in accord with the Ker standard. At the new trial provided for by the district court order, if desired by the Commonwealth, opportunity would be afforded for the proffer of that testimony if any.

The judgment of the district court will be affirmed.