UNITED STATES of America ex rel.
Joseph AMETRANE

v.

John I. GABLE, Warden, Delaware
County Prison.

Misc. No. 3340.

United States District Court
E. D. Pennsylvania.

Oct. 17, 1967.

Joseph W. deFuria, of deFuria, Larkin & deFuria, Chester, Pa., for relator.

Jacques H. Fox, Dist. Atty., and Ralph B. D'Iorio, Asst. Dist. Atty. Delaware County, Media, Pa., for respondent.

## OPINION

BODY, District Judge.

Relator Ametrane was tried and convicted by the state trial court of setting up a gambling establishment and of bookmaking. He was sentenced to pay a $500 fine and to serve three months' imprisonment. The conviction was affirmed by both the Superior and Supreme Courts of Pennsylvania.[1] On August 5, 1966, he began to serve his sentence. On August 11, 1966, he was released on bail by order of this Court pending disposition of his habeas corpus petition.

On October 4, 1966, a hearing was held. The evidence presented consisted solely of the record, which contained the testimony at the pre-trial and trial levels. The relator did not testify either at trial or in this proceeding.

The relator's petition rests primarily on the contention that the police officers entered his apartment before they announced their identity, authority, and purpose; that the officers had no justification for such failure to give notice; and that therefore the officers' method of entering his apartment offended federal constitutional standards of reasonableness and vitiated the legality of the accompanying search and seizure. The relator thus concludes that the state courts erroneously denied his petition to suppress the evidence obtained by the allegedly illegal search and seizure. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

From the record, the following facts appear:

On August 27, 1963, two county detectives obtained warrants authorizing the arrest of relator Ametrane and a search of his premises. At 2:40 p. m. that same day the detectives arrived at the alley passage leading to the ground floor entrance of Ametrane's second floor living quarters. The detectives were not in uniform; they wore ordinary street clothes. As they proceeded down the alley, they saw Ametrane in the second floor bay window, sitting at a table where the detectives had on prior occasions observed him making and receiving telephone calls.

One detective testified that Ametrane "looked down as we were coming * *." R. 34a. The detectives then hurried up to Ametrane's door and rapped loudly. They waited approximately one minute. They heard nothing, and no one answered their knock on the door. They knocked again and immediately began to pry open the door with a two-foot crowbar. One detective testified that the tapered end of the bar was between the door and the jamb when "the next thing I knew, I heard a voice from behind the door saying don't break my door, I'll let you in." R. 36a.

Relator Ametrane, dressed in his underwear, had come down the steps from his second story living quarters. To keep the detectives from forcing his lock, he opened his door.

The police entered, went upstairs to Ametrane's living quarters, and remained there for approximately one hour gathering evidence and intercepting telephone calls. It is fairly clear that at *some* point in time, the detectives identified themselves and showed Ametrane the warrants. However, the question is whether the detectives gave their identity and stated their authority and purpose *before* they entered upon Ametrane's premises.

The state courts' findings on whether or when the detectives stated their authority and purpose are inconsistent with the record and with each other. At the preliminary hearing, the state court did not determine whether such notice was ever given; the court merely concluded that Ametrane, by opening the door, had

1. See Commonwealth v. Ametrane, Nos. 110, 111 December Sessions 1963, Court of Quarter Sessions of Delaware County, Pa.; Commonwealth v. Ametrane, 205 Pa.Super. 567, 210 A.2d 902 (1965); Commonwealth v. Ametrane, 422 Pa. 83, 221 A.2d 296 (1966).

consented to the officers' entry. R. 51a. The Superior Court, however, concluded that the lower court had found that the detectives had made an announcement by ringing a bell or by knocking. Commonwealth v. Ametrane, 205 Pa. Super. 567, 574, 210 A.2d 902 (1965). The lower court did not make a finding on whether an adequate announcement had been made. Furthermore, the detectives testified that they did not see a doorbell. R. 35a. To further obfuscate the issue, the Supreme Court added that Ametrane could not object to the detectives' failure to state their identity or purpose because "he was well aware of who were at his door and why they were there." Commonwealth v. Ametrane, 422 Pa. 83, 88, 221 A.2d 296, 298 (1966).

■ None of the three state courts' conclusions are supported by the evidence in the record. Opening a door to which two men are applying a crowbar simply does not imply any meaningful consent to entry. Ringing a bell or knocking on a door hardly announces the identity and purpose of the ringer or knocker. Finally, there is no evidence suggesting that Ametrane knew the two men in plain clothes to be county policemen.

■ However, despite their apparent contradictions, the three state court conclusions appear to be founded on one implicit common premise: that the officers did not explicitly announce their identity or purpose before they entered. At the preliminary hearing the lower court excused the failure of notice by finding consent; the Superior Court found an implied announcement; and the Supreme Court found pre-existing awareness on the part of the relator. Had any of the three courts believed the officers to have stated their identity and purpose before entry, the findings excusing the failure of notice would not have been necessary. We accept the implicit common premise, and from the record find as fact that although the officers possibly may have identified themselves before entering, they did not state their purpose or show their warrants. It is true that at the pre-trial hearing, one of the detectives testified that when Ametrane opened the door, they had shown their badges and informed him that they had warrants. R. 37a. However, there is no indication that the detectives explained the subject matter or nature of the warrants. Furthermore, the same detective's trial testimony indicated that the detectives stated their purpose and identity only *after* entering and climbing the steps to the relator's second floor living quarters. R. 56a; R. 69a. The state courts apparently accepted the trial testimony as more accurate. So do we.

■ The State Supreme Court held the arrest and search to be legal despite the officers' failure to give notice of their identity and purpose prior to entry. Clearly, the lawfulness of the method of entry is to be determined by reference to state law insofar as it is not violative of the federal constitution. Ker v. State of California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); cf. Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). However, we are warranted in examining the method of entry to determine whether, notwithstanding its legality under state law, the entry offended federal constitutional standards of reasonableness and thereby vitiated the legality of the accompanying search and arrest.

■■ The fourth amendment prohibition against unreasonable search and seizure clearly demands that, ordinarily, before a police officer enters upon private premises to conduct a search or to make an arrest, he must give notice of his identity and purpose; the only exception is when exigent circumstances justify the failure to give notice. Ker v. State of California, supra. Nor is the fact that the officers had search and arrest warrants relevant to the legality and reasonableness of the method of entry or of the failure to give the required notice. United States ex rel. Manduchi v. Tracy, 350 F.2d 658, 660 (3d Cir.),

cert. den. 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965).

The state Supreme Court concluded that despite the officers' failure to give notice, their entry into Ametrane's premises was reasonable for two reasons: first, the officers' entry into the apartment was not "forceful"; second, the *Ker* exceptions apply because the officers were justified in believing that Ametrane knew their identity and purpose and was then attempting to destroy evidence of his gambling activities. We disagree.

## A. *Forceful entry*

■ The "forceful entry" in Ker v. State of California, supra, was the use of a pass key by the police. Merely pushing open a stuck door has been held a forceful entry. Keiningham v. United States, 109 U.S.App.D.C. 272, 287 F.2d 126 (1960). Here, the police officers had actually inserted the crowbar between the door and the jamb in order to force the door open. R. 36a. By the officers' own testimony, Ametrane told the officers he would open the door to prevent the officers from breaking it down. R. 36a. That the relator answered the door in his underwear further indicates that he did not open the door voluntarily, but rather felt compelled to do so. There is no evidence in the record that Ametrane voluntarily decided to admit the officers. It is obvious that if Ametrane had not opened the door when he did, the officers would have broken it down and barged upstairs; no entry could have been more forceful. The officers accomplished their objective by the physical threat of applied force; Ametrane admitted them only to prevent the destruction of his property. Only by the threat of force did the officers get the relator's door open and thus gain admittance; the threat was sufficient to render the entry "forceful."

## B. *The Ker exceptions*

The state Supreme Court further held that even if the entry was forceful, it should be considered justified within two exceptions described in Ker v. State of California, supra. The state court observed that:

"[E]xceptions to the rule of announcement exist * * * where the persons within already know of the officers' authority and purpose or 'where those within, made aware of the presence of someone outside * * * are then engaged in activity which justifies the officers in the belief that * * * the destruction of the evidence is being attempted.'" 374 U.S. at 47, 83 S.Ct. at 1636.

Commonwealth v. Ametrane, 422 Pa. 83, 88, 221 A.2d 296 (1966).

The state court found that Ametrane had observed the officers and opened the door *after* the officers knocked and *before* the officers applied the crowbar to the door; and that therefore Ametrane obviously knew the officers' identity and purpose without a formal announcement. However, there is no evidence in the record that Ametrane recognized the officers; one officer merely testified that the relator had "looked down" from his second floor window as the officers came toward his door. R. 34a. The officers were not in uniform; they wore ordinary street clothes. There is no testimony that Ametrane had ever seen the two men before or that he knew them to be policemen. Nor is there any direct evidence that he even *saw* the two men. Finally, the evidence indicates that the officers had actually inserted the crowbar between the door and the jamb, and that Ametrane opened the door *not* because he knew the men to be policemen, but rather to prevent the destruction of his door. R. 36a. The two detectives had never announced their identity or purpose, and we find the record does not support the conclusion that Ametrane must have already known their identity and purpose.

The state court also found that "the lengthy silence maintained by the defendant after observing the officers and hearing their knock" justified the officers in the belief that Ametrane was at-

tempting to destroy evidence. Commonwealth v. Ametrane, 422 Pa. 83, 88, 221 A.2d 296 (1966). The question is whether the facts which were apparent to the police called for a forced entry without first making an announcement of identity and purpose and giving Ametrane an opportunity to open the door peaceably and voluntarily. See United States ex rel. Manduchi v. Tracy, supra, 350 F.2d at page 662.

The police thought that Ametrane had seen them coming down the alley. Even if he did *see* them, there was no reason for Ametrane to recognize two men in street clothes as police officers armed with search and arrest warrants. Had the officers been in uniform, this might be a different case. Under the circumstances, however, we do not believe it was reasonable for the officers to assume that they had been recognized or that Ametrane knew the men knocking on his door to be police officers. It has already been found that the officers did not announce their identity and purpose before they entered. Since Ametrane thus had no way of knowing that the men at his door were policemen with warrants, he was not obligated to answer his door at all. Furthermore, the police did not hear any suspicious noises beyond the door indicating that Ametrane might be destroying evidence; rather than the "scuttling" noise heard by the police in *Manduchi*, supra, the officers could testify only to the fact of silence. Additionally, the period between the officers' first knock and their application of crowbar to door was approximately but one minute. The relator was on the second floor. Even if he had known the officers to be policemen, he might have had countless legitimate reasons for taking a minute to answer the door. We simply do not find any exigent circumstances justifying a forceful entry made without proper notice. Finally, even if the officers' use of force could be justified *before* the relator opened his door, the officers should certainly have stated clearly their identity and purpose *after* the door

was opened and *before* they entered the house.

 At first glance, the notice requirement may appear a rule without a reason. It is true that, by obtaining valid arrest and search warrants, the police had already established their right to invade Ametrane's privacy. However, the *Ker* "method of entry" requirements are analogous in purpose to the fourth amendment particularity requirements. For example, a warrant must be founded on probable cause, *and* must describe the persons or things to be seized and the place to be searched with particularity. Satisfaction of the probable cause requirement gives the police the authority to invade an individual's privacy, as it did in the case sub judice. However, the particularity requirement governs police conduct after the police have entered the individual's zone of privacy; the particular description prevents a general exploratory search by limiting the officers' authority to search and seize. As the particularity requirement governs police procedure *after* the police are in the zone of privacy, so the "method of entry" requirement governs police procedure *as* they enter the zone of privacy. In Ker v. State of California, supra, the Supreme Court clearly established that the dignity and privacy protected by the fourth amendment demand a certain propriety on the part of policemen even after they have been authorized to invade an individual's privacy. Regardless of how great the probable cause to believe a man guilty of a crime, he must be given a reasonable opportunity to surrender his privacy voluntarily. From the evidence in the record before us, we do not believe that the relator Ametrane was provided that constitutionally required opportunity.

Because of our disposition of the illegal entry issue, we do not reach the relator's contention that the arrest warrant and the complaint were constitutionally defective for failure to specify the date when the alleged offense was committed.

Writ granted.