454 P.2d 140

**The STATE of Arizona, Appellee,**

v.

**Espiridion Morales MENDOZA, Appellant.**

**No. 1733.**

Supreme Court of Arizona.

In Banc.

May 1, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., by T. M. Pierce, Asst. Atty. Gen., for appellee.

Charles M. Giles, Tucson, for appellant.

McFARLAND, Justice:

Defendant Espiridion Morales Mendoza, hereinafter referred to as defendant, was tried and convicted of unlawful possession of narcotic drug—heroin—in violation of § 36–1002, A.R.S., with a prior conviction, and was sentenced to serve a term of not less than fifteen years nor more than sixteen years in the Arizona State Penitentiary. From the judgment and sentence of the court, he appeals.

Defendant was 52 years of age at the time of the trial, and had been addicted to the use of narcotics for approximately twenty-five years.

■ The first question presented by defendant was whether criminal punishment of a narcotic addict for the possession of narcotic drugs constitutes cruel and unusual punishment.

Counsel for defendant contends that the instant case is similar to that of Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, wherein the Supreme Court of the United States held that the statute of the State of California which makes it a criminal offense to be addicted to the use of narcotics inflicts cruel and unusual punishment and violates the Eighth Amendment to the Constitution of the United States. Counsel for defendant contends that possession is necessarily corollary to the addiction, in that one addicted to the use of narcotics is under compulsion to have it in his possession for use; therefore, a statute which provides for the punishment of an addict who has possession of narcotics is, under the holding in Robinson v. State, supra, unconstitutional. However, the Court, in Robinson, supra, also stated:

"The broad power of a State to regulate the narcotic drugs traffic within its borders is not here in issue. More than forty years ago, in Minnesota ex rel. Whipple v. Martinson, 256 U.S. 41, 41 S.Ct. 425, 65 L.Ed. 819, this Court explicitly recognized the validity of that power: 'There can be no question of the authority of the state in the exercise of its police power to regulate the administration, sale, prescription and use of dangerous and habit-forming drugs * * *. The right to exercise this power is so manifest in the interest of the public health and welfare, that it is unnecessary to enter upon a discussion of it beyond saying that it is too firmly established to be successfully called in question.'"

We cannot agree with defendant's conclusion. We believe it ignores the public policy against the possession of dangerous narcotics. The "cruel and unusual punishment" clause has been directed at the *method or kind of punishment imposed for the violation of the criminal statute*; and the nature of the conduct made criminal is ordi-

narily relevant only to the fitness of the punishment imposed. Powell v. State of Texas, 392 U.S. 514, 88 S.Ct. 2145, 2155, 20 L.Ed.2d 1254.

In Bailey v. United States, 386 F.2d 1, 5th Cir., the Court said:

"Robinson is not authority for appellants' position. * * * The *holding was limited* to the criminality of addiction, and the Court said there is no constitutional objection to punishment for the 'unauthorized manufacture, prescription, sale, purchase, or *possession* of narcotics.'"

[Emphasis added.]

We hold that § 36–1002, A.R.S. is constitutional, and punishment thereunder does not amount to cruel and unusual punishment.

The second question presented by defendant was whether the evidence should have been suppressed for the reason that it was obtained by a search of defendant's premises.

Defendant contends that the failure of the trial court to suppress the evidence obtained as the result of the peace officers' search was error for the reason that the search warrant was executed in such a manner that it violated the prohibition against unreasonable searches and seizures contained in the Fourth Amendment to the Constitution of the United States, and also the mandate set forth in § 13–1446, subsec. B, A.R.S., which provides:

"The officer may break open an outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose he is refused admittance. * * *"

On March 16, 1966, Sergeant William Dunn of the Tucson Police Department secured a search warrant from the justice of the peace to search the premises of defendant. Four detectives in plain clothes went to defendant's one-room apartment at 9:30 in the morning. One man was sent around to watch the rear window, which was the only exit from the apartment except for the front door. The other three proceeded

to the door. Without any words directed to the occupant inside, one detective took the handle of the screen door, which was outside the inner door, and shook it in an attempt to open it. He was unsuccessful. Testimony indicates the surrounding area was quiet, and the rattling was considerable, but there was no testimony as to whether defendant actually did hear the noise. One detective then checked with the officer at the rear to determine if he had seen defendant, and when it was determined he had not he returned to the front and informed the other officers. Then Lt. Zuno pulled on the screen door, and this time it opened. Lt. Zuno testified he then grasped the knob on the inner door, turned it, and opened the door. Sgt. Dunn testified "the door was just pushed inward."

After Lt. Zuno opened the door the other officers followed him inside. It is uncontroverted that at no time did they knock, or announce who they were, or their purpose for being there. Once inside the officers discovered defendant sitting on his bed in a T-shirt and underpants. Sgt. Dunn knew defendant from past encounters on narcotics violations. He greeted defendant, promptly presented him with a search warrant, and then informed him of the purpose of the visit. Defendant remained sitting in bed through the search. After some twelve minutes the officers found three papers containing over 400 milligrams of heroin in the frame of the bed.

The question is whether the action of the police officers in failing to announce their identity before forcibly entering defendant's apartment, as provided for in § 13–1446, subsec. B, A.R.S., constituted an unreasonable search and seizure. The State contends that it was not an unreasonable search and seizure, and cites as authority Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. In Ker the Supreme Court of the United States, in passing upon the question of the admissibility of evidence obtained without a search warrant in the State of California, held that the search was incident to a legal arrest and therefore admissible. The Court said:

"It is contended that the lawfulness of the *petitioners'* arrests, even if they were based upon probable cause, was vitiated by the method of entry. This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrests for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Miller v. United States, supra, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332; United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Johnson v. United States, 333 U.S. 10, 15, n. 5, 68 S.Ct. 367, 370, 92 L.Ed. 436 (1948). *A fortiori,* the lawfulness of these arrests by state officers for state offenses is to be determined by California law. California Penal Code, § 844,[9] permits peace officers to break

"9. 'To make an arrest, * * * in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which * * * [he has] reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.'

into a dwelling place for the purpose of arrest after demanding admittance and explaining their purpose. Admittedly the officers did not comply with the terms of this statute since they entered quietly and without announcement in order to prevent the destruction of contraband. The California District Court of Appeal, however, held that the circumstances here came within a judicial exception which had been engrafted upon the statute by a series of decisions, [Cases cited.] and that the noncompliance was therefore lawful.

\* \* \* \* \* \*

" * * * Here justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might

well have been expecting the police. We therefore hold that in the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment."

The Court based its holding on a "judicial exception which had been engrafted upon the statute by a series of decisions." The California Penal Code, ¶ 844, permits peace officers to break into a dwelling place for the purpose of arrest after demanding admittance and explaining their purpose. While this statute is similar to § 13–1446, subsec. B, A.R.S., which provides in the execution of a search warrant that the "officer may break open an outer or inner door * * * after notice of his authority and purpose [if] refused admission * * *" However, unlike California, this Court has not by a series of decisions engrafted a judicial exception to the statute.

18 U.S.C. Par. 3109, provides:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if after no-tice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

It will be noted that this section is similar to that of § 13–1446, subsec. B, A.R.S. The Supreme Court, in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, in passing upon this requirement, held:

"The rule seems to require notice in the form of an express announcement by the officers of their purpose for demanding admission. The burden of making an express announcement is certainly slight. A few more words by the officers would have satisfied the requirement in this case. It may be that, without an express announcement of purpose, the facts known to officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture.

Cf. People v. Martin, 45 Cal.2d 755, 290 P.2d 855; Wilgus, Arrest Without a Warrant, 22 Mich.L.Rev. 541, 798, 802 (1924). But even by that test the evidence upon which the Government relies was not sufficient to justify the officers' failure expressly to notify the petitioner that they demanded admission to his apartment for the purpose of arresting him."

In Ker, supra, the Court expressly noted that the California Court, in testing the validity of the arrest as a matter of state law, had not mentioned Miller v. United States, supra, so it evidently did not think the facts were the same as in the Miller case.

In United States ex rel. Manduchi v. Tracy, 3 Cir., 350 F.2d 658, which involved execution of a search warrant, the Court said:

"* * * Neither he nor any of the other officers announced their presence and purpose. The interval between Williams tapping on the door and breaking it open was a few seconds. All of this gives us the sole question on this appeal. * * *

* * * * * *

"The district court, having Ker very much in mind, properly concluded that the search warrant per se did not insulate the law enforcement representatives from the necessity of reasonably conducting their search. Under the Ker directive the court made its own examination of the facts and decided that the search when it was made was unreasonable.

* * * * * *

"The issue confronting us for decision is truly rather close. But just as truly the evidence that was introduced at the Manduchi trial was not of the urgency that called for the immediate action of forcing entry without making known who was at the door and their purpose and of allowing the occupants the opportunity of opening the door peaceably. There may possibly be available background evi-

dence that perhaps might indicate exigent circumstances which are in accord with the Ker standard. At the new trial provided for by the district court order, if desired by the Commonwealth, opportunity would be afforded for the proffer of that testimony if any."

The questions in the instant case are:

First, whether the officers' identity and purpose were announced pursuant to § 13–1446, subsec. B, A.R.S. There was absolutely no evidence that the officers' identity and purpose were announced before they made their entry. Instead, the evidence is that they rattled the screen door, and, when they did not hear any sound, forced their entrance, finding defendant sitting in bed.

Second, whether the facts justify an exception to § 13–1446, subsec. B.

In Ker, supra, the United States Supreme Court recognized judicial exception which it states has been engrafted upon the statute by a series of California decisions, which were cited, and quoted extensively from the leading case of People v. Maddox, 46 Cal.2d 301, 294 P.2d 6. These California decisions hold in effect that if the officers have reasonable ground to believe that the evidence which they wish to seize would be destroyed by an advance announcement of identity and purpose of their entry, then the officers would be justified in making such an entry without such announcement.

As was pointed out in Miller v. United States, supra, from the earliest days the common law drastically limited the authority of law-enforcement officers to break open the door of a house. This is summed up in the ancient adage that "A man's house is his castle." There is no more sacred right than to have the privacy of the home protected against unreasonable searches and seizures. An unexpected breaking into a home by officers might well result in their being killed under the impression that the home owner was protecting his family and his home against intruders.

There is a lack of proof in the instant case to show that if the officers had an-nounced their identity and purpose the occupant would have destroyed the evidence which they were attempting to seize.

The State contends that it is common knowledge that narcotics are usually contained in tiny receptacles being easily and quickly destroyed, the presumption being that the occupant would so destroy the evidence and the purpose of the search thereby frustrated. If this were the only evidence required then the requirements of § 13–1446, subsec. B, A.R.S., would become a nullity in narcotics cases.

In United States v. Blank, D.C., 251 F.Supp. 166, the Court, in passing upon the question as to whether officers had a right to assume the occupants would be able to destroy the evidence, stated:

"* * * It is never permissible for agents to *assume* that the occupants of suspect premises will attempt to destroy or hide the objects of an intended search. There must be some tangible, objective evidence, rather than the mere suspicion, intuition or 'hunch' of an enforcement officer, upon which a reasonable man could conclude that closed doors are harboring clandestine efforts to destroy or conceal evidence; then, and only then, a forcible invasion of the premises would be reasonable." [Emphasis in original.]

In the instant case we see no justification for the officers not knocking at the door and announcing their identity before entering the apartment. There was no evidence that had they done so they would not have been immediately given permission to enter. Instead they rattled the door, and when they did not hear any sound they forced their entrance, finding defendant sitting in bed.

While the evidence in some cases might well be such as to provide reasonable cause for officers to believe that their announcement of the purpose of their entry would cause the search to be frustrated, such is lacking in the instant case. It must be more than the presumption that the evidence *would* be destroyed because it *could* be easily done. There must be substantial

evidence which would cause the officers to believe that such evidence would be destroyed if their presence were announced. There is a lack of substantial evidence to show that the narcotics sought would have been destroyed had such procedure been followed.

 We hold that the officers failed to comply with § 13–1446, subsec. B in that they entered without announcing their identity and purpose. We further hold that the facts do not justify a judicial exception to § 13–1446, subsec. B; that to justify an exception to this section of the Arizona Code providing for an announcement of the presence and purpose of the officers, there must be substantial evidence to cause the officers to believe that the evidence which they are seeking to obtain by the search warrant would be destroyed if their presence and purpose were announced; otherwise it might well lead to improper invasion of privacy of a home, and also endanger the lives of officers. This would amount to a "shortcut" which should not be recognized as an excuse for non-compliance with § 13–1446, subsec. B, A.R.S. In Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, the United States Supreme Court reversed the rule as set forth in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, and held that exclusionary rule prohibits the admission of evidence unlawfully seized in State as well as Federal courts. The Court, in discussing the ignoble short-cut to conviction, stated:

> "Federal-state cooperation in the solution of crime under constitutional standards will be promoted, if only by recognition of their now mutual obligation to respect the same fundamental criteria in their approaches.

> " 'However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness.' Miller v. United States, 1958, 357 U.S. 301, 313,

78 S.Ct. 1190, 2 L.Ed.2d 1332, 1340. Denying shortcuts to only one of two co-operating law enforcement agencies tends naturally to breed legitimate suspicion of 'working arrangements' whose results are equally tainted. Byars v. United States, 1927, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Lustig v. United States, 1949, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819."

We hold, in the instant case, the execution of the search warrant was illegal, and the evidence should have been suppressed. It is unnecessary to decide the other questions presented in defendant's brief.

Judgment reversed and the cause remanded for further proceedings consistent with this decision.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER, J., and CAMERON, Judge, Court of Appeals, Division One, concur.

NOTE: Justice HAYS did not participate in the preparation of this opinion; hence, Judge CAMERON sat in his stead.