## Commonwealth v. DeMichel, Appellant.

554

Argued November 10, 1970. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused May 21, 1971.

*Lenard H. Sigal,* for appellant.

*Paul R. Michel,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 22, 1971:

Upon the basis of various lottery paraphernalia seized pursuant to a search warrant and introduced into evidence at trial, appellant Adam DeMichel was convicted of setting up and maintaining an illegal lottery and sentenced to undergo imprisonment for three to twelve months and to pay a fine of five hundred dollars plus costs. In this appeal from the judgment of sentence, appellant asserts that the evidence that led to his conviction was the fruit of an illegally executed search warrant. Upon reviewing the record we must agree.

Appellant was arrested on January 14, 1967, during a police search of his home at 707 Sears Street in Philadelphia. Also present at the time were appellant's wife and daughter. Upon initial entry into the house, the police observed appellant at a kitchen sink attempting to destroy rice paper, and in the course of the ensuing search they found and seized other sheets of rice paper containing several thousand lottery bets, other blank sheets of rice paper, lists of names, adding machine tape, and other lottery paraphernalia.

Prior to trial appellant filed a timely motion to suppress these items, and an evidentiary hearing was held on March 4, 1968. From testimony elicited at that hearing it appeared that five police officers armed with

a search warrant arrived at the front of appellant's two-story row house at 12:40 p.m. on January 14, 1967. All were dressed in plain clothes, and one of their number, Officer Daniel Creden, approached the front door alone carrying a cardboard box in an attempt to create the false impression of a deliveryman.

Corporal Frank Hall, another member of the raiding party, testified as follows concerning the execution of the search warrant: "Q. Did . . . [appellant] admit you to the premises? A. No. We had to gain entrance. Q. How? A. We broke the door down. Q.With or without prior warning? A. With. . . . Q. What type of warning did you give to the occupants of the house before breaking in the door? A. I told him we were police officers, we had a warrant. Q. How much time elapsed between the time you said that and when you broke in the door, approximately? A. Approximately ten or fifteen seconds." Upon cross-examination by appellant's counsel, Hall restated his version of the entry into the house but did not reaffirm that he *personally* gave any warnings to the occupants.[1]

At the conclusion of the hearing, appellant's counsel argued that the affidavit supporting the issuance of the search warrant was defective and that the police's method of entry into appellant's home was illegal. The hearing judge was unpersuaded and the motion for suppression denied.[2]

---

[1] Instead, Hall used the pronoun "we": "Q. And would you describe specifically, sir, the manner in which you attempted to gain entrance to these premises? A. We knocked on the door, and after hearing sound coming from inside the house *we* announced ourselves as police officers and that we had a warrant. . . . Q. What did you do? A. *We* announced ourselves as police officers and we had a search warrant. . . ."

[2] The question of the sufficiency of the affidavit is not pressed on this appeal.

Appellant thereafter waived a jury, and his case proceeded to trial on May 16, 1968, before a different judge of the Philadelphia Court of Common Pleas. During the Commonwealth's case in chief, new and different evidence came to light concerning the execution of the search warrant. Corporal Hall again described the events surrounding the police's entry into appellant's house but failed to mention that he had given any warnings to the occupants, and Officer Creden, the policeman who actually knocked on appellant's door, gave the following testimony: "Q. Now, sir, would you relate to the Court specifically in detail what occurred from the time you arrived at these premises until the time entry was made? A. Well, I guess we arrived around 12:40 p.m., I walked west on Sears Street, at 7th Street, I went up and knocked on the door. A few seconds, the blind was lifted up, and I announced that we were police. The blinds dropped, and we proceeded to knock the door down. Q. Within what period of time, sir? A. From the time that the blinds were dropped? Q. Yes, sir. A. Ten, five, I don't know how many seconds. Q. Seconds, sir? A. Well, as soon as the blinds dropped, I called the fellow officer who had the sledge hammer and knocked the down. . . . Q. Just to make the record perfectly clear, when you first knocked, you did not say anything at all, did you? A. No. I just knocked. Q. And then, according to your testimony, someone lifted up the blinds? A. Yes, sir. Q. Could you tell whether that was male or female, sir? A. I couldn't tell. I believe there were curtains behind the blinds. I couldn't see who it was. Q. Then the blinds dropped, sir, is that correct? A. That is correct. Q. And then you made an announcement that you were police officers, is that correct, sir? A. No, it is not. While the blinds were up, I said, 'Open up, it is the police.' Q. *And that is all you said, sir?* A. *Yes.*" (Emphasis added.)

Appellant was adjudged guilty, but the trial judge granted his post-trial motion in arrest of judgment on the ground that the evidence at trial demonstrated that the officers who executed the search warrant had not announced their purpose before resorting to forcible entry. The Superior Court, reasoning that a trial judge has no power to overrule the decision of a suppression hearing judge, reversed the order granting arrest of judgment and remanded the case for sentencing. Following the imposition of sentence, appellant again appealed to the Superior Court. That court affirmed the judgment of sentence, and we granted allocatur.

Preliminarily we note our disagreement with the Superior Court's apparent categorical holding that a trial judge is powerless to overrule the decision of a suppression hearing judge. While "[w]e impliedly held in Commonwealth v. Warfield, 418 Pa. 301, 211 A. 2d 452 (1965) that the trial judge cannot reverse *on the same record* at trial the decision made after the pretrial suppression hearing . . .," *Commonwealth v. Washington,* 428 Pa. 131, 133 n.2, 236 A. 2d 772, 773 n.2 (1968) (emphasis added), the same does not hold true when the trial judge's different ruling is based upon new and different evidence. When information comes to light after the suppression hearing clearly demonstrating that the evidence sought to be introduced by the Commonwealth is constitutionally tainted, no consideration of justice or interest of sound judicial administration would be furthered by prohibiting the trial judge from ruling it inadmissible. Although a favorable ruling at the suppression hearing relieves the Commonwealth of the burden of proving a second time at trial that its evidence was constitutionally obtained, the trial judge must exclude evidence previously held admissible at the suppression hearing when the defendant proves by a preponderance of new evidence at trial that the evi-

dence sought to be introduced by the Commonwealth was obtained by unconstitutional means.[3]

Although we thus disagree with the Superior Court, we believe that the trial judge in the instant case erred in granting appellant's motion in arrest of judgment upon the basis of a finding that the police officers executing the search warrant did not properly announce their purpose before entering appellant's house. Officer Creden testified unequivocally at trial that *he* had made no announcement of purpose, but he did not state that his fellow officers were similarly mute or contradict Corporal Hall's suppression hearing testimony that Hall had made such an announcement of purpose. That being so, the record at trial in no way proves the absence of a proper police announcement of purpose.

Despite the foregoing, we are nevertheless persuaded for other reasons that the search of appellant's home was illegally executed. It is settled in this Commonwealth that the Fourth Amendment prohibition against unreasonable searches and seizures demands that before a police officer enters upon private premises to conduct a search or to make an arrest he must, absent exigent

---

[3] At the time of appellant's trial, the method of pretrial litigation of the legality of searches and seizures was governed by Pa. R. Crim. P. 2001, which did not expressly speak to the question whether a trial judge could overrule the decision of the suppression hearing judge. Rule 2001 was superseded by a 1969 amendment to Pa. R. Crim. P. 323, which consolidated and made uniform the procedures relating to pretrial suppression of any evidence alleged to have been obtained in violation of a defendant's constitutional rights. Even this new consolidated rule recognized that there are some circumstances in which the trial judge should be free to exclude evidence previously held admissible.

"If the [suppression hearing] court determines that the evidence is admissible, such determination shall be final, conclusive and binding at trial, *except upon a showing of evidence which was theretofore unavailable . . . .*" Pa. R. Crim. P. 323(j) (emphasis added).

circumstances, give notice of his identity and announce his purpose. *Commonwealth v. Newman,* 429 Pa. 441, 240 A. 2d 795 (1968) ; *United States ex rel. Manduchi v. Tracy,* 350 F. 2d 658 (3d Cir.), cert. denied, 382 U.S. 943, 86 S. Ct. 390 (1965) ; *United States ex rel. Ametrane v. Gable,* 276 F. Supp. 555 (E.D. Pa. 1967). The purpose of this announcement rule is that ". . . the dignity and privacy protected by the fourth amendment demand a certain propriety on the part of policemen even after they have been authorized to invade an individual's privacy. Regardless of how great the probable cause to believe a man guilty of a crime, *he must be given a reasonable opportunity to surrender his privacy voluntarily."* *United States ex rel. Ametrane v. Gable,* supra, 276 F. Supp. at 559 (emphasis added). Accordingly, even where the police duly announce their identity and purpose, forcible entry is still unreasonable and hence violative of the Fourth Amendment if the occupants of the premises sought to be entered and searched are not first given an opportunity to surrender the premises voluntarily. See *United States ex rel. Manduchi v. Tracy,* supra, 350 F. 2d at 662.

The Commonwealth appears to concede this proposition of constitutional law but argues that the occupants of appellant's house were in fact given an adequate opportunity to open the door voluntarily. Corporal Hall and Officer Creden testified that they and the other officers began to break down the front door of appellant's house five to fifteen seconds after announcing their presence and purpose. We cannot deem this a reasonably sufficient period of time. In *Newman,* supra, for example, this Court stated that "a mere twenty second delay in answering the door cannot constitute support for a belief that evidence was being destroyed . . . ." 429 Pa. at 448, 240 A. 2d at 798. And in *Ametrane,* supra, the United States District Court

for the Eastern District of Pennsylvania noted that "[e]ven if . . . [the occupant] had known the officers to be policemen, he might have had countless legitimate reasons for taking a minute to answer the door." 276 F. Supp. at 559.

In both of the above cases the occupants were known by the police to be on the second floor whereas here Corporal Hall and Officer Creden testified that they saw someone peering at them through the blinds of a first story window located very near the front door. Given the close proximity of this person to the door, we are urged to conclude that a mere five to fifteen second delay was reasonable. But even in these circumstances this might be entirely innocent "for countless legitimate reasons." Appellant's wife, for example, testified that it was she who peered through the window and that her delay in responding was occasioned by her being attired in a nightgown and having to go to the kitchen to put on a robe. Regardless of the truth of her testimony, it serves to illustrate that a five to fifteen second delay was insufficient for the police to have formed a reasonable belief that the occupants of appellant's house did not intend to permit peaceable entry.

Finally, we are not persuaded that this case presents "exigent circumstances" suspending the ordinary requirement that the occupants of premises sought to be searched be given a reasonable opportunity to open the door voluntarily. The police officers involved were seeking to execute a warrant authorizing them to enter, search for and seize lottery paraphernalia, and from their prior experience with this type of mission they reasonably believed that some of the paraphernalia would be in the form of almost instantaneously destructible rice paper. However, as we stated in *Newman*: "The fact that some lottery paraphernalia is easi-

ly destroyed does not justify the suspension of the Fourth Amendment in all lottery prosecutions. One of the prices we have to pay for the security which the Fourth Amendment bestows upon us is the risk that an occasional guilty party will escape." 429 Pa. at 448, 240 A. 2d at 798 (citation omitted). To excuse the police's failure to announce their purpose and presence and thereafter to allow a reasonable time for the voluntary surrender of the premises, there ". . . must be more than the presumption that the evidence *would* be destroyed because it *could* be easily done." *State v. Mendoza,* 104 Ariz. 395, 399, 454 P. 2d 140, 144 (1969).

The testimony that appellant was found standing by a kitchen sink attempting to destroy rice paper is without significance.

"It goes without saying that in determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry.* Johnson v. United States, 333 U.S. 10, 17, 68 S. Ct. 367, 370-371, 92 L. Ed. 436 (1948). As the [Supreme] Court said in United States v. Di Re, 332 U.S. 581, 595, 68 S. Ct. 222, 229, 92 L. Ed. 210 (1948), 'a search is not to be made legal by what it turns up. In law it is good *or bad* when it starts and does not change character from' what is dug up subsequently." (Emphasis added.) *Ker v. California,* 374 U.S. 23, 40 n.12, 83 S. Ct. 1623, 1633 n.12 (1963).

We hold that forcible entry in the circumstances of this case violated the standards of the Fourth Amendment and that the fruits of the ensuing search were improperly admitted at appellant's trial. Accordingly, the order of the Superior Court is reversed. The judgment of sentence is vacated and the case remanded for a new trial.

Mr. Justice EAGEN concurs in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

I respectfully dissent from that portion of the Court's opinion which holds that a five to fifteen second delay after announcement by the police of their presence and purpose is not a sufficient lapse of time before forcible entry of a dwelling may be resorted to.

In the case before us there was a valid warrant for the search of a small, two-story family residence. The search warrant authorized seizure of quickly destructible lottery paraphernalia. The officers seeking to execute the warrant believed the records would be on rice paper, which dissolves on contact with water. They announced themselves as police officers who had a search warrant. They heard voices inside the house. Just after their announcement they saw a window blind on a window next to the front door of the house raised and someone within look out the window. The blind was then lowered. The two officers who testified both at the suppression hearing and at trial were uncertain how much time elapsed thereafter before they broke open the door. They estimated it variously as between five and twenty seconds.[1]

Defendant's wife testified that she went to the kitchen to get a robe before opening the door. She

---

[1] The actual testimony in this respect was as follows: "approximately ten or fifteen seconds"; "ten, five, I don't know how many seconds"; "I couldn't possibly say it was ten seconds or twenty seconds or five seconds"; "I couldn't tell exactly how long it was, but it was very shortly after that [the announcement and the raising and lowering of the blind]".

said her husband was asleep on the couch at the time, and that she was the one who always opened the door when there was a knock. Asked where her husband was when the officers came in, she answered that when he heard "the crash" (i.e., the door being broken) he jumped up, and went to the kitchen. (One of the officers had previously testified that when they entered the defendant was in the kitchen holding white paper under the tap water.)

I do not consider that *Commonwealth v. Newman*, 429 Pa. 441, 240 A. 2d 795 (1968) dictates the result now reached by the Court. The question there was whether there were any "exigent circumstances" that would justify dispensing with the announcement of purpose. It was held that the lapse of twenty seconds after an inadequate announcement ("the police") was not such an exigent circumstance because it was not long enough "to constitute support for a belief that evidence was being destroyed."[2] In the present case dual warning of authority and purpose *was* given. The police could therefore properly conclude that the failure promptly to open the door was not because the occupants did not know by what authority and for what purpose the police claimed the right to enter, but because evidence was being destroyed.

Once the officers have announced their identity and purpose, they should have to wait only the time necessary for someone to come to the door to admit them. Here the premises to be searched was a small residence; voices were heard inside the house after the police announcement; and someone raised and lowered a window blind a few feet from the door. I must agree with the suppression hearing judge, the trial judge and the Superior Court that under all the circumstances of this

---

[2] As the majority opinion points out, in *Newman* the occupants were known to the police officers to be on the second floor.

566

case the Fourth Amendment guarantee against unreasonable search and seizure was not violated. Cf. *Commonwealth v. Murray*, 441 Pa. 22, 25, 271 A. 2d 500 (1970) (dissenting opinion).

Mr. Justice JONES joins in this dissenting opinion.