**Commonwealth v. Goldstein**

*Kathleen N. Coleman*, for Commonwealth.

*Nicholas A. Clemente*, for defendant.

PORTER, J., March 13, 1973.—On September 12, 1972, Philadelphia policemen, armed with a search and seizure warrant whose validity is unquestioned, visited defendant's premises to search for and seize materials concerning lottery and horse betting.

One of the policemen was dressed in civilian work clothes and wore the cap of an employe of the Philadelphia Gas Works.

What occurred at the door is the subject of three different versions of testimony. The one which I accept as true is as follows:

The imposter "Gas Man" rang the bell and announced himself as such. He reported a gas leak. When defendant answered the door, the disguised officer again said, "We had a report of a gas leak in the area and we would like to get in to check it out."

As a result defendant admitted the disguised officer who entered and left the door open so that the uniformed policemen could follow him inside. Then the door was closed and the police announced their identity and purpose and served the warrant.

This case presents the question, open in Pennsylvania,[1] of whether this search and seizure was unlawful, despite the prior issuance of a search warrant, because a ruse was employed by the police to gain

---

[1] Commonwealth v. Usciak, 62 Lanc. 360 (1971), involved a police disguise to approach but not enter the premises. The Superior Court declined to decide the matter of ruse because the policeman identified himself and his purpose outside of the door: 222 Pa. Superior Ct. 235 (1972).

entrance to the premises and there was no proof at all as to exigent circumstances.

There is considerable authority among the Federal Circuit Courts of Appeals and elsewhere that a search initiated by ruse is lawful because it involves no breaking: e.g., United States v. Syler, 430 F. 2d 68 (7th Cir. 1970); Smith v. United States, 357 F. 2d 486 (5th Cir. 1966); Dickey v. United States, 332 F. 2d 773 (9th Cir. 1964), cert. den. 379 U.S. 948 (1964). Comment, 8 Houston L. Rev. 977 (1971).[2]

The holdings in Smith, Dickey and Syler were not reached under the Fourth Amendment. They were decided under 18 U.S.C. §3109. Section 3109 states, in pertinent part, as follows:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance."

This provision first appeared in the Espionage Act of 1917, Tit. XI, Ch. 30, sec. 8, 40 Stat. 229. It was derived from New York statutory and case law: H. R. No. 69, 65th Cong., 1st Sess. 20, 55 Cong. Rec. 3305, 3307 (1917); Blakey, The Rule of Announcement and Unlawful Entry, 112 U. Pa. L. Rev. 499, 513 n. 98 (1964).

Both from its substance and its State law origins, it is clear that this section was enacted to implement the application of the Fourth Amendment to a special class of cases. Congress clearly did not and could not

---

[2] But cf. State v. Furry, 31 Phio, App. 2d 107, 286 N.E. 2d 301 (Ohio Ct. App. 1971), decided under Ohio R. C. §2935.12 as to unannounced entry through closed but unlocked door. See also Gatewood v. U. S., 209 F. 2d 789 (D. C. Cir. 1953), entry initiated by ruse and perfected by force, held invalid; People v. Mills, 298 N.Y. Supp. 2d 549 (1969).

redefine in its entirety the Fourth Amendment's guarantees of security as to persons, houses, papers, and effects, and the amendment's ban upon "unreasonable searches and seizures" as to them.

From this it seems clear that the decisions above are incorrect in attempting to decide questions of the legality of entry by ruse merely by reference to the statutory section 3109.

In support of their decisions as to ruse, these opinions have also cited and sometimes stressed the United States Supreme Court's opinion in Sabbath v. United States, 391 U.S. 585 (1968).

Sabbath, however, was not decided under the Search and Seizure provisions of the Fourth Amendment. It squarely was decided under 18 U.S.C. §3109, supra, 391 U.S. at 587-588. The Fourth Amendment was not even mentioned in the court's opinion. Petitioner referred to it only in connection with a separate question as to warrantless arrest: Sabbath v. U. S., October term, 1967, no. 898, Brief for Petitioner, pages 2, 3, 37-45. As to the overriding importance given 18 U.S.C. §3109, see Brief for Petitioner, pages 2, 3, 12-14, 17-32, 39.

For these reasons I think that the present question must be resolved by direct application of the Fourth Amendment, which, of course, is applicable to the States under the Due Process Clause of the Fourteenth Amendment: Ker v. California, 374 U.S. 23 (1963); Mapp v. Ohio, 367 U.S. 643 (1961).

In Gouled v. United States, 255 U.S. 298 (1921), the United States Supreme Court stated:

*"it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion.* The security and privacy of the home or office and of the papers of the owner would be as much

invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.

"Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion [of unconstitutionality] are unsound, and that, *whether entrance to the home or office of a person suspected of crime be obtained by a representative . . . of the Government of the United States by stealth, or through social acquaintance, or in the guise of a business call,* and whether the owner be present or not when he enters, *any search and seizure subsequently and secretly made in his absence falls within the scope of the prohibition of the Fourth Amendment"*: 255 U.S. at 305, 306. (Italics supplied.)

That case involved a secret search and seizure of papers which was made in the owner's absence, but I do not regard the quoted language as any the less applicable to a search made in the owner's presence pursuant to an entrance as a result of fraud. Nor do I construe this decision as applicable only to the right of entry, not to its manner. Compare Blakey, op. cit., supra, at 555.

The Pennsylvania Appellate Courts, although not dealing squarely with the problem of ruse, have dealt directly with the issues underlying this question.

In Commonwealth v. DeMichel, 442 Pa. 553, 560-61 (1971), the Supreme Court stated as follows:

"It is settled in this Commonwealth that the Fourth Amendment prohibition against unreasonable searches and seizures demands that before a police officer enters upon private premises to conduct a search or to make an arrest he must, absent exigent circumstances, *give notice of his identity and announce his purpose.* Commonwealth v. Newman, 429 Pa. 441,

240 A. 2d 795 (1968); United States ex rel. Manduchi v. Tracy, 350 F. 2d 658 (3d Cir.), cert. denied, 382 U.S. 943, 86 S. Ct. 390 (1965); United States ex rel. Ametrane v. Gable, 276 F. Supp. 555 (E.D. Pa. 1967). *The purpose of this announcement rule is that ' . . . the dignity and privacy protected by the fourth amendment demand a certain propriety on the part of policemen even after they have been authorized to invade an individual's privacy.' "* (Italics supplied.)

The Superior Court recently recognized the same requirements in Commonwealth v. Cerulla, 223 Pa. Superior Ct. 24, 27 (1972), as follows:

"The issue presented by these facts is whether a forcible entry into an occupied apartment by police, without a *prior announcement of presence, identity, or purpose,* is unreasonable under the Fourth Amendment . . . We hold that such a search is unreasonable." (Italics supplied.)

See also U.S. ex rel. Manduchi v. Tracy, 350 F. 2d 658 (3d Cir. 1965), cert. denied 382 U.S. 943 (1965); Commonwealth v. Jenkins, 223 Pa. Superior Ct. 176, 177-179 (1972), dissenting opinion.

These decisions strongly affirm the requirement of announcement of identity and purpose as a prerequisite to police entry, even with a warrant. Thus, regardless of their factual dissimilarity, I regard them as controlling on this point.

Granted such obligation of police announcement, absent exigent circumstances not present here, it is inconceivable that this requirement can be met where the police employ ruse *for the very purpose of avoiding identification* of themselves or their purpose.

Even if Miss Goldstein saw the uniformed policemen before they entered, she easily could have assumed that they were escorting the "Gas Man" around the neighborhood because of a gas leak and for no other

purpose. They said nothing to the contrary until they had entered her residence.

The Fourth Amendment bans *all* "unreasonable" searches and seizures. Had the Framers intended to proscribe only *forcible* entries they easily could have said so.

"Unreasonableness" implies a balancing of considerations: the privacy and security of the householder, inter alia, against certain compelling police necessities. The scales, however, must, because of the history of the amendment, be weighted in favor of individual privacy and against unreasonable and unjustified means of police intrusion.

Here the impropriety was not less because it was deceptive and passive rather than forceful. It was offensive to dignity and privacy and served no exigent police needs. The police had no right to initiate a search in this manner.

For these reasons I have granted defendant's motion to suppress the lottery and betting evidence.

This opinion contains my findings of fact and conclusions of law.

## Commonwealth v. Davenport