**UNITED STATES ex rel. Michael TURCO, Relator,**

v.

**Hon. Edward DROSS, as Warden of Harts Island Prison, New York City, Respondent.**

United States District Court
S. D. New York.
June 25, 1963.

Ira H. Holley, New York City, for relator.

Frank S. Hogan, Dist. Atty., New York County, for Respondent; John A. K. Bradley, Alan Frederick Leibowitz, New York City, of counsel.

McGOHEY, District Judge.

The petitioner was convicted after a trial in the New York City Magistrates' Court of possession of policy slips and possession of book-making or pool-selling records, misdemeanors under N. Y. Penal Code, §§ 975 and 986-b respectively, McKinney's Consol. Laws, c. 40. He was sentenced to concurrent jail terms and fines. The judgments of conviction were affirmed unanimously, without opinion, by the New York Supreme Court Appellate Term, First Department [1] and permission to appeal to the Court of Appeals was denied by Judge Fuld of that Court. Having thus exhausted all available state remedies,[2] Turco filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

He does not challenge the validity of his arrest. His contentions at the trial, on appeal and here are, first, that certain evidence seized at the time of his arrest should have been excluded under the rule of Mapp v. Ohio;[3] and, second, that he was denied his right "guaranteed" by the Sixth and Fourteenth Amendments "to be informed of the nature and cause of the accusation."

There is no dispute as to the facts. They were thoroughly developed at the trial, the unchallenged record of which was offered in support of the petition and reviewed by this court. Neither the petitioner nor New York offered or sought to offer additional evidence on any of

1. N.Y.Law Journal, March 22, 1963, p. 14, col. 2.

2. 28 U.S.C. § 2254; Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

3. 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

the issues raised by the petition. Accordingly no hearing was held.[4]

The petitioner was arrested and the evidence seized in the apartment of the petitioner's codefendant, Margaret Drakeford, to whom he had paid $5 for use of the apartment.[5] The seized evidence consisted of slips of paper which contained wagering notations. The arrests and seizure were made at three o'clock in the afternoon by two New York City police officers who had a warrant to search the apartment. The validity of the warrant is not challenged. But it is contended the search was constitutionally defective, thus rendering the seized evidence inadmissible, because the officers failed, before entering the apartment, to give notice of their authority and purpose.

When the officers came to the apartment which was in the basement of the building, they found the door leading from the public hallway into the living room open and no one was in the living room. They indeed made no announcement *before* entering but as soon as they were in the living room they called out and announced that they were police officers. Then, hearing some "commotion" in the adjoining bedroom, they went in there and found the petitioner seated at a table on which lay the seized evidence. The petitioner was using a telephone. The officers again identified themselves and, having produced the search warrant, seized the papers on the table.

Petitioner urges that the officers' entry under the foregoing circumstances must be held unconstitutional under the rule of Miller v. United States,[6] and its prog-eny, particularly Keiningham v. United States,[7] and Hair v. United States.[8] Initially it must be noted that the facts in each of these cases differ significantly from the facts here. In each of the cases cited by the petitioner the officers lacked a warrant of any kind. In none did they announce their authority or purpose at any time. In Miller, they broke down a barred door. In Keiningham and Hair, without invitation they opened closed doors and in Hair they charged in with guns drawn.[9] Moreover, as the Supreme Court recently pointed out in Ker v. California,[10] Miller was not a constitutional decision but an exercise of the court's supervisory power over federal officers based upon violation of a federal statute, and therefore "inapposite for state prosecutions, where admissibility is governed by constitutional standards." [11]

The criterion in the instant case must be that of reasonableness, which is "in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in the opinions of this Court applying that Amendment." [12] In Miller, the Supreme Court was applying the criteria embodied in 18 U.S.C. § 3109 which describes the duty of federal officers executing a search warrant. New York authorizes the breaking of doors in words almost verbatim those of the federal statute, including a requirement of notice of authority and purpose.[13] There is no indication in the reported cases that New

---

4. Townsend v. Sain, 372 U.S. 293, 322, 83 S.Ct. 745, 9 L.Ed.2d 770.

5. Both defendants were charged and tried jointly. Both were represented by the attorney who appears for the petitioner here. Neither of them testified at their trial.

6. 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

7. 109 U.S.App.D.C. 272, 287 F.2d 126.

8. 110 U.S.App.D.C. 153, 289 F.2d 894.

9. See United States v. Garnes, 2 Cir., 258 F.2d 530, 533, cert. denied 359 U.S. 937, 79 S.Ct. 651, 3 L.Ed.2d 637.

10. 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.

11. Id. at p. 39 of 374 U.S., at p. 1633 of 83 S.Ct., 10 L.Ed.2d 726.

12. Id. at p. 33 of 374 U.S., at p. 1630 of 83 S.Ct., 10 L.Ed.2d 726.

13. N.Y.Code Crim.Proc. § 799.

York's courts would interpret its statute to require police to make an announcement before peacefully entering through an open door,[14] and from its disposition of the instant case, it must be assumed that the New York's courts found the actions of the officers consistent with its statute, or at least sufficiently compliant therewith to be free from federal constitutional defect.[15] The ultimate test, however, is one of federal constitutional law, "neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."[16] The principles embodied in the Fourth Amendment are derived from the common law. Breaking-in statutes such as 18 U.S.C. § 3109 codify "a tradition embedded in Anglo-American law."[17] But the common law did not require a prior announcement before entry through an open door. In Semayne's Case,[18] often cited as the earliest statement of the breaking-in principle,[19] it was declared that "In all cases when the door is open the sheriff may enter the house, and do execut. at the suit of the subject, either of the body or of the goods."[20]

■ Viewed in the light of these historic principles, the actions of the officers in this case were not unreasonable. Upon their approach to the open apartment door, the premises appeared to be unoccupied. It was not required that the officers remain physically outside the threshhold, the interior laying in open view, while no one in charge of the premises appeared to be within hearing distance.[21] Indeed the open door was tantamount to an invitation to anyone to advance at least into the living room.[22] The petitioner was put on notice of the authority and purpose of the officers at the earliest practicable moment.

■ Assuming that the petitioner's claimed right under the Sixth Amendment "to be informed of the nature and cause of the accusation" is one which is "fundamental and essential to a fair trial" and made obligatory upon the States by the Fourteenth Amendment,[23] the assertion of its denial in the instant case is frivolous.

He was tried upon two informations sworn to before a magistrate.[24] Both informations set forth in detail the acts constituting the alleged crimes. There is neither claim nor evidence that the petitioner was hindered in preparing his defense;[25] nor any suggestion that he was in the slightest degree misled.[26]

The petition is in all respects denied. So ordered.

14. See People v. Rodriguez, 38 Misc.2d 949, 237 N.Y.S.2d 924.

15. See People v. Johnson, Gen.Sess., 231 N.Y.S.2d 689; People v. Montanaro, 34 Misc.2d 624, 229 N.Y.S.2d 677, 684.

16. Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669.

17. Miller v. United States, supra, at 313, of 357 U.S., at 1198 of 78 S.Ct., 2 L.Ed.2d 1332; see Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456.

18. 5 Co.Rep. 91a, 92a, 77 Eng.Rep. 194, 197 (1603).

19. See Miller v. United States, supra, at 308 of 357 U.S., at 1198 of 78 S.Ct., 2 L.Ed.2d 1332; Ker v. California, supra, at 46 of 374 U.S., at 1635 of 83 S.Ct., 10 L.Ed.2d 726 (dissenting opinion).

20. See also Hodges v. Marks, Cro.Jac. 485, 79 Eng.Rep. 414 (1615); Lee v. Gansel, 1 Cowp. 1, 5, 98 Eng.Rep. 935, 937 (1774); Lloyd v. Sandilands, 8 Taunt. 250, 252, 129 Eng.Rep. 379, 380 (1818).

21. Compare People v. Johnson, supra.

22. "The principle, that every man's house is his castle depends on this, that if the outer door be broken, it lays the house open to the invasion of all sorts of persons * * *." Lloyd v. Sandilands, 8 Taunt. 250, 252, 129 Eng.Rep. 379, 380 (1818).

23. Cf. Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799. See People ex rel. Sandman v. Tuthill, 79 App.Div. 24, 79 N.Y.S. 905.

24. N.Y.Code Crim.Proc. § 145.

25. United States v. Cruikshank, 92 U.S. 542, 558, 23 L.Ed. 588.

26. Hallman v. United States, 93 U.S.App. 39, 208 F.2d 825.