**UNITED STATES of America ex rel.
Kenneth G. DYTON, Petitioner,**

v.

**John C. ELLINGSWORTH, Warden,
Sussex Correctional Institution,
Respondent.**

**No. 111.**

United States District Court
D. Delaware.

Oct. 29, 1969.

Stanley C. Lowicki, Wilmington, Del., for petitioner.

John P. Daley, Deputy Atty. Gen., Wilmington, Del., for respondent.

## OPINION

LATCHUM, District Judge.

Kenneth G. Dyton, petitioner in this habeas corpus proceeding, was tried on April 1, 1968 in the Superior Court of the State of Delaware in and for New Castle County, and convicted by the Court sitting without a jury for the illegal possession of a hypodermic needle and a narcotic drug. He was sentenced on May 16, 1968 to serve a three year term of imprisonment on the first charge and a ten year term of imprisonment and fined $2000 on the second charge.

Both terms of imprisonment were to run concurrently, and the last seven years of imprisonment on the second charge were suspended and a probationary period of the same length imposed. The convictions were affirmed by the Delaware Supreme Court on January 16, 1969.[1]

The principal issue before this Court was raised and decided adversely to the petitioner in the state courts at the time of trial and in the subsequent appeal. Consequently petitioner's state remedies have been effectively exhausted even though he has not instituted any state post-conviction proceeding and the present petition is properly before this Court. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), rehearing den. 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370 (1953).

Petitioner's primary contention is that police officers entered an apartment in which he was visiting before announcing their identity, authority, and purpose; that the officers had no justification for such failure to give notice; and that therefore, because the officers' method of entering the apartment offended federal constitutional standards of reasonableness, the subsequent search and seizure were invalid. Thus petitioner concludes that the state courts erroneously denied his motion to suppress the evidence obtained by the allegedly illegal search and seizure.

On October 8, 1969 a hearing was held in this Court in order to supplement and clarify the testimony contained in the state court trial transcript. The hearing was required for two reasons. First, it was necessary because of the ambiguous basis for the trial court's conclusion that the search and seizure were "reasonable." It was unclear whether the trial court found no legal requirement for the police to announce their authority and purpose before entry, or whether it found proper notice had been given prior to entry, or whether the trial court found that other circumstances existed which dis-

1. Dyton v. State of Delaware, 250 A.2d 383 (Del.Sup.Ct.1969).

pensed with such notice. The trial court's failure to articulate any legal standards or to make findings of fact afforded an inadequate basis for review by the appellate court. Secondly, a hearing in this Court appeared justified in view of the Supreme Court's independent factual determination from the trial transcript that the police officers gave a twenty second warning of their identity and purpose before entering the apartment which it held fully comported with the requirements of the Delaware common law announce and knock rule. After considering the state court trial record as a whole, this Court concluded that the Supreme Court's independent factual determination of that time interval did not appear to be fairly supported by that record. Consequently, in order to clarify the state court record and to determine the constitutional issue presented here, a further hearing was required in this Court. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

From the state trial record as supplemented by the testimony at the hearing in this Court, the following facts appear:

On June 30, 1967, Sergeant Lennox Smith of the Wilmington Bureau of Police obtained a search warrant for the apartment of William A. Jones, Jr. located on the second floor of 701 East 7th Street, Wilmington. At about 9:50 a. m. on that date Sergeant Smith and four other vice squad officers [2] proceeded to the apartment building where Jones lived. The officers entered the open door of the apartment building on the first floor and climbed the steps leading to Jones' apartment on the second floor. As the officers approached Jones' apartment, they heard voices emanating therefrom and noticed that the door was ajar for about a half inch to an inch. Sergeant Smith knocked on the door. His knock caused the door to swing open about six to eight inches. When the door opened to that extent, the petitioner and Jones, who were seated in the apartment to the right of the door, came into full view of Sergeant Smith and Officer Maloney who were standing at the door outside of the apartment. Petitioner, who was seated about three feet away from the door, and Jones, who was sitting about eight feet away, stopped talking upon hearing the knock and turned and looked directly at the officers standing at the door. Neither of the occupants arose, made any effort to answer the knock or said anything to the officers.

The officers were not in police uniforms but Sergeant Smith recognized the petitioner as a City Housing Inspector whose office was directly down the hall in the City Building from the vice squad's office. In fact, Smith and Dyton often spoke and talked to one another while going to and from their offices. Smith and Jones also knew one another. Smith had led a raid on Jones' apartment on May 10, 1968, a little over a month before the instant confrontation occurred, and had also on one or two occasions talked to Jones on the street.

About twenty seconds elapsed while the police and occupants confronted each other from these positions. It was then that Smith pushed the door all the way open, walked into the apartment and simultaneously with entering announced that they were police officers with a search warrant. Smith and Maloney proceeded to stand in front of Dyton and Jones, who remained seated, again identified themselves, stated that they had a search warrant for the apartment and all occupants and commenced to read the warrant to them.

While the search warrant was being read, Sergeant Smith saw the petitioner surreptitiously remove a small pink tissue from his pocket and stuff it out of view between the cushions of the chair in which he was seated. Upon observing this, Smith told Dyton to stand up,

---

2. Sergeant De Graw and Officers Maloney, Shahan and Chickadel of the Wilmington Bureau of Police.

retrieved the tissue from the chair and found it was wrapped around three glassine packets containing heroin. On retrieving the tissue and examining its contents, Smith placed Dyton under arrest for possession of heroin and told Officer Maloney to search his person. In petitioner's right-hand trouser pocket was found a hypodermic needle, an eyedropper, and certain miscellaneous items, all of which constituted a "home-made" device for injecting liquids into the body. These items were admitted into evidence at trial over petitioner's objections.

The principal issue raised by the present petition is whether the evidence so seized should have been excluded from the trial as the product of an unreasonable search and seizure prohibited by the Constitution of the United States. More narrowly stated, the question is whether, under the circumstances of this case, the entry into the apartment by the city police officers armed with a valid search warrant without announcing their authority and purpose outside of the apartment violated constitutional safeguards against unreasonable searches and seizures.

■ The Fourth Amendment's prohibition against unreasonable searches and seizures, with its accompanying sanctions that evidence so obtained must be excluded at trial, is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), rehearing den. 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961). In determining whether the search is reasonable, federal constitutional standards must be applied. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). One of the requirements of reasonableness under federal standards is that police officers must, prior to entry upon private premises to conduct a search, make an announcement of their authority and purpose for seeking entry unless there are circumstances excusing their failure to do so. Ker v. California, supra.

The testimony of the police officers clearly indicates that verbal notice of their identity and purpose was not given except contemporaneously with their entry into the apartment. The Delaware Supreme Court, however, as noted above, based its conclusion that the search was reasonable on its finding that there had been a twenty second interval between announcement of identity and purpose and the subsequent entry of the apartment. Since this crucial premise was proved inaccurate by the testimony adduced at the evidentiary hearing in this Court, it must now be determined whether the facts found by this Court compel a conclusion that the police action was unreasonable.

■ The constitutional validity of the police action here should be evaluated in the light of the historical development of the knock and announce rule, the values protected by such a rule, and the specific procedures which have been recognized as necessary to fulfill the purposes of the rule. Extensive historical commentary is not necessary here, but the basic outline can be briefly sketched.[3] The United States Supreme Court has recognized that long before the adoption of the Bill of Rights, it was firmly established that the fundamental liberty of an individual included protection against unannounced police entries. As early as Semayne's Case, 5 Co.Rep. 91a, 91b, 77 Eng.Rep. 194–195 (1603), it was declared "[i]n all cases when the King is a party, the Sheriff( if the doors be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process,

---

3. The historical development of the rule has been thoroughly canvassed by the Supreme Court and in law review articles. See Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); Blakely, The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California, 112 U.Pa. L.Rev. 499 (1964); Wilgus, Arrest Without a Warrant, 22 Mich.L.Rev. 541 (1924).

if otherwise he cannot enter. But before he breaks it, he ought to signify the cause of his coming, and make request to open doors * * *."

In Ker v. California, supra, eight Justices of the Supreme Court, while differing on the application of the rule in the case before it, recognized that the prohibition against unannounced police intrusion, was a part of the fundamental liberty guaranteed by the 4th and 14th Amendments. Beyond protecting the privacy and dignity of the individual in his home, the knock and announce rule is also intended to minimize potential dangers which may arise when officers seek admission to private dwellings. Compliance with the rule, therefore, (1) safeguards police officers who might be mistaken for prowlers and shot by the fearful householder,[4] (2) protects residents from prosecution for assault or murder growing out of his forcible resistance to an unannounced entry of an officer in his home,[5] (3) avoids needless destruction of property and affords the occupants the opportunity to open the door peaceably [6] and (4) provides a final opportunity for a resident to clarify the purpose of the police intrusion, to demand identification from the officer or to indicate that the resident or the premises are not as described in the warrant.[7]

In the development of the knock and announce rule, however, certain exceptions, excusing strict compliance with the rule, have been recognized as fully consistent with realization of the values protected by the rule. One exception was acknowledged by the Supreme Court in Miller v. United States, supra, when the Supreme Court said, 357 U.S. p. 310, 78 S.Ct. p. 1196:

"It may be that, without an express announcement of purpose, the facts known to the officers would justify them in being virtually certain that the petitioner already knows their purpose so that an announcement would be a useless gesture."

The same type of exception was again noted in Ker. In that case, county police officers, having probable cause to arrest the petitioner, obtained a pass key to Ker's apartment from the building manager, entered without a prior announcement of identity and purpose and searched his apartment. The Court assumed the entry was equivalent to a "breaking." In holding that the evidence seized in Ker's apartment as a result of the unannounced entry was admissible, the Court stressed the circumstances which excused compliance with the requirement to announce authority and purpose, stating:

"Here justification for the officers' failure to give notice is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for belief that he might well have been expecting the police." Id. 374 U.S. at 40, 83 S.Ct. at 1633.

The dissenting Justices in Ker also recognized this exception when they said:

"Even if probable cause exists for the arrest of a person within, the Fourth

---

4. Miller y. United States, supra, 357 U.S. 313, fn. 12, 78 S.Ct. 1190.

5. In Curtis' Case, Fost. 135, 168 Eng.Rep. 67 (1756), the failure of an officer to properly announce his identity and purpose before breaking into a home was recognized as a defense to a murder charge growing out of the slaying of the intruding officer.

6. Cf. United States ex rel. Manduchi v. Tracy, 350 F.2d 658, 662 (C.A.3, 1965), cert. den. 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965).

7. "[C]ases of mistaken identity are surely not novel in the investigation of crime. The possibility is very real that the police may be misinformed as to the name or address of a suspect, or as to other material information. That possibility is itself a good reason for holding a tight rein against judicial approval of unannounced police entries into private homes." Ker v. California, 374 U.S. 23, 57, 83 S.Ct. 1623, 1641–1642, 10 L.Ed.2d 726 (1963).

Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) *where the persons within already know of the officers' authority and purpose, * * *.*" Id. at 47, 83 S.Ct. at 1636. (Emphasis supplied)

I conclude, after a careful review of the record, that exceptional circumstances existed in the present case which excused strict compliance with the knock and announce rule. The present record reveals that after the officers knocked and the door swung open the officers and occupants were clearly visible to one another. Al though the officers were in plain clothes, Sergeant Smith was known to both petitioner and Jones as a member of the Wilmington Vice Squad. Further, after knocking and facing the occupants through the open door, the police waited approximately twenty seconds before entering the apartment. In light of these particular circumstances this Court concludes that strict compliance with the knock and announce rule should be excused in this case for at least three different and independent reasons.

First, the police intrusion was reasonable as to Jones, the permanent resident of the apartment. To this Court, a recognition of police identity would suggest to a reasonable man that the five police officers were seeking to conduct a search or make an arrest and had not come for a social visit or for some improper purpose.[8] To Jones his recognition of Smith's identity also should have provided particular and clear indication of Smith's purpose, because Jones had been present only a month before when Officer Smith had led a similar raid on his apartment.[9] Thus, I find that Jones was reasonably certain of the police purpose before the officers entered his apartment.

Further, the reasonableness of the manner of the police entry should be measured in the light of the knowledge and expectations of Jones at the time the police entered his apartment. The petitioner was simply Jones' guest and as such, the protection afforded him under the knock and announce rule was not as extensive as that owed to Jones. When one is a guest in another's apartment the presence of five men at the doorway, absent some menacing conduct on their part, is not ordinarily a matter of proper concern to the guest when his host is present.

Having found that Jones was reasonably certain of the police purpose in seeking entry, I therefore find that compliance with the knock and announce rule did not require informing petitioner of the specific police purpose before the officers crossed the threshold of the apartment. This is particularly true when the petitioner at least knew the identity of Sergeant Smith. Thus, he at least had no reason to conclude that their purpose was in any way improper.

Second, I find that the evidence indicates that petitioner was reasonably certain of the police purpose before the officers entered the Jones apartment. The record indicates that the petitioner and Sergeant Smith worked on the same floor of the City Building in Wilmington, knew each other and had engaged in occasional conversations. When Sergeant Smith appeared at the doorway with four other men (although they were not dressed in police uniforms) the official purpose of Officer Smith in seeking entry—either to conduct a search or to make an arrest—should have been

---

8. In the application of the knock and announce rule it has been recognnized that "a declaration of purpose is implicit in a declaration of identity." United States v. Alexander, 346 F.2d 561, 562 (C.A.6, 1965).

9. The Court does not here intimate that an individual once his dwelling has been subjected to a search pursuant to warrant, gives up his right to expect an announcement of police authority and purpose in appropriate circumstances. This Court is considering only the reasonableness of police action in light of the facts of this particular case.

reasonably apparent to petitioner. I find that the official purpose of the police in seeking entry was reasonably apparent to the petitioner, that a formal announcement of identity and purpose was not required and that, therefore, the officers' manner of entry was reasonable under the circumstances.

Third, I find that it was not unreasonable, under the totality of the circumstances, for the officers to announce their purpose contemporaneously with their entry into the apartment. The record indicates that after an initial knock by Sergeant Smith, the door opened six to eight inches, making the two occupants and Sergeant Smith clearly visible to one another.

After the door first opened to this extent the officers waited outside the apartment in plain view of petitioner and Jones for at least twenty seconds before entry. Because both occupants of the apartment knew Smith's identity, the twenty second delay provided them with a reasonable opportunity to inquire about the purpose of the police. Having had this initial opportunity to clarify the purpose of the police, it was not unreasonable for the police then to step across the threshold of the apartment and simultaneously make a formal announcement of their identity and purpose. To hold otherwise would be such a mechanical and insensitive application of the rule as to call into question and damage general respect for the rule and its liberal application in proper circumstances. This is not a case where those seeking admission are unknown persons concealed by a closed door who reasonably should give notice of their identity and purpose to afford an opportunity to open the door peaceably. Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); United States ex rel. Manduchi v. Tracy, 350 F.2d 658, 662 (C.A.3, 1965), cert. den. 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965). Here the occupants were confronted through a partially open door just a few feet away by persons known to them to be police officers. Petitioner and Jones had every reasonable opportunity during the twenty second interval after the knock to inquire about the police purpose and to surrender their privacy voluntarily to the police after they were seen and recognized. Consequently, I find that the method of entry was reasonable in this case and comported with constitutional standards.

■ Petitioner also contends that Jones' wife was in another part of the apartment and neither saw nor heard the officers before they entered the apartment. Assuming this to be so and that Jones' wife's rights may have been violated by the manner of entry, it affords no comfort to the petitioner. He has no standing to challenge the alleged invasion of constitutional rights of Jones' wife who allegedly was in the apartment. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

■ Finding that the entry into the apartment was reasonable under the unique circumstances of this case, the arrest and subsequent search of the petitioner's person were also authorized. The search of the chair in which petitioner was sitting was clearly valid under the search warrant and since the officers had observed the petitioner remove the heroin from his pocket and stuff it in the chair his arrest was based on probable cause. The search of his person following his arrest was entirely justified as a search incident to a lawful arrest. Finally, the fact that the petitioner was dressed in the uniform of a City Housing Code Inspector did not immunize him from arrest and a search incident thereto, when, as in this case, probable cause existed for his arrest for a felony committed in the presence of the officers.

An order will be entered dismissing the petition and denying the writ of habeas corpus.