**UNITED STATES of America, Plaintiff,**

v.

**Leza PRICE, Jr., Defendant.**

**No. LR–CR–77–133–(1).**

United States District Court,
E. D. Arkansas, W. D.

Dec. 7, 1977.

Kenneth F. Stoll, Richard M. Pence, Jr., Asst. U. S. Attys., Little Rock, Ark., for plaintiff.

Art Givens, Givens & Buzbee, Little Rock, Ark., for defendant.

MEMORANDUM OPINION

SHELL, District Judge.

On November 2, 1977, an evidentiary hearing was held in this Court on defendant's motion to suppress evidence obtained as a result of an allegedly unlawful search and seizure. Upon completion of the hearing, the Court ruled from the bench that the motion was denied, and proceeded, pursuant to Rule 23(a), to hear the merits of the case. At the close of the trial, the Court, upon further consideration, set aside its earlier ruling on the motion to suppress and took both the motion and the case-in-chief under advisement. Accordingly, this

opinion incorporates the Court's findings of fact and conclusions of law.

Although there is some dispute, the Court finds the facts relevant to the motion to suppress to be as follows:

On December 10, 1976, a valid search warrant was issued by an Arkansas municipal judge authorizing a search of a "mobile home located at approximately fifty yards north of the intersection of Oak Grove Road and Highway 365 on Oak Grove Road on the west side of the road in Pulaski County being gold in color with brown trim around the top and bottom and brown shutters." The warrant was issued upon the affidavit of Arkansas State Trooper Jerry Roberts,[1] and listed the property to be seized as certain currency and marijuana.

Shortly after the judge issued the warrant, Trooper Roberts and four North Little Rock police officers arrested Kerry Hodge[2] and proceeded to the mobile home described in the warrant. Upon arriving there at about 12:30 a. m., the officers and Hodge quietly approached the trailer. At the

front door, Trooper Roberts drew his revolver with his right hand and held Hodge in front of him with his left hand; the other officers were standing behind them. When the front door opened,[3] Trooper Roberts pushed Hodge into the trailer,[4] then he and the other officers charged in with their guns drawn and began to search the dwelling.

It is clear that the policemen identified themselves once they had gained entry into the dwelling. But, it is equally clear that the officers did not state their identity, authority or purpose *before* they entered the defendant's premises; nor did they attempt to serve the warrant *beforehand*.[5]

The resulting search not only produced a substantial amount of "green vegetable matter" appearing to be marijuana, but also a sawed-off 20-gauge shotgun. Subsequently, the defendant was indicted by the United States Grand Jury for the Eastern District of Arkansas for violation of 26 U.S.C. § 5861(d),[6] which makes possession of certain nonregistered firearms illegal.

1. In his affidavit, Trooper Roberts deposed the following: that, while "working undercover," one Kerry Hodge had informed him that he could purchase marijuana "at any time and in any quantity" from the resident of a certain "mobile home, gold in color, with brown trim around the top and around the bottom and brown window shutters and being located approximately fifty yards north of the intersection of Oak Grove Road and Highway 365 on Oak Grove Road on the west side of the street in Pulaski County"; that on October 5 and 7, and December 7, 1976, he and Kerry Hodge went to Oak Grove where Roberts parked his vehicle approximately fifty yards from the mobile home, that Hodge exited the vehicle, walked to and entered the trailer, and on all three occasions returned to Roberts' vehicle with containers of "green vegetable matter" that was represented to be marijuana; that on December 10, 1976, he and Kerry Hodge returned to Oak Grove where he handed Hodge $135.00 of marked United States currency, and again Hodge went to the mobile home and returned with a green vegetable material that was represented to be one pound of marijuana, and that on this occasion Hodge stated to Roberts that he could purchase up to fifteen "kilos of marijuana" from the resident of the gold trailer.

2. See footnote 1, *supra*.

3. A discrepancy exists between the testimony given by Trooper Roberts and that given by the occupants of the trailer with respect to how the door was opened. Since it is clear that the officers did not announce their identity, authority and purpose *before* entering the trailer, this discrepancy need not be resolved.

4. It is nothing less than shocking to this Court that Trooper Roberts would use Kerry Hodge as a virtual hostage for entering the trailer. It should be blatantly obvious to any competent police officer that such conduct is intolerable, for Mr. Hodge or the police officers themselves could have been harmed greatly.

5. On direct examination, Trooper Roberts testified that he knocked on the door, identified himself, and served the warrant on the defendant before he or the other officers entered the trailer; however, Roberts completely qualified his testimony on cross examination and admitted that the warrant was not served beforehand and that neither he nor the other officers had identified themselves, their authority or their purpose *prior* to entering the dwelling.

6. 26 U.S.C. § 5861 provides in relevant part: "It shall be unlawful for any person— . . . (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record . . . ."

The defendant attacks the warrant and the resulting search and seizure on a number of grounds,[7] most of which are without merit. However, a substantial question is raised with respect to whether the method of entry into the trailer by the police officers offended the constitutional guarantee against unreasonable searches and seizures, thereby rendering the seized evidence (i. e.—the shotgun) inadmissible.

The Fourth Amendment to the United States Constitution mandates that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.

Whether a search and seizure is reasonable is "a substantive determination to be made by the trial court from the facts and circumstances of the case and in light of the 'fundamental criteria' laid down by the Fourth Amendment and in the opinions of this Court applying that Amendment." *Ker v. California,* 374 U.S. 23, 33, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963). In short, a federal constitutional standard is to be applied in determining the reasonableness of a search and seizure.[8] *E. g., United*

---

**7.** The defendant's "shotgun approach" lists the following grounds in support of his motion to suppress:

"A. The police officer failed to describe with specificity, as required by law, the place to be searched;

"B. That the affidavit fails to state a necessity for a nighttime search, as required by Rule 13.2 [of the Arkansas Rules of Criminal Procedure];

"C. That the officers failed to comply with the 'knock-before-entering' provision of Rule 13.3 (249 Ark. 405);

"D. That the officers, after unlawfully entering the premises, violated Rule 13.3 in that they continued to search for other matter once the described contraband was located, in violation of *Marron vs. United States,* 275 U.S. 192; [48 S.Ct. 74, 72 L.Ed. 231]

"E. That the officers further, prior to entering the mobile home, failed to present a copy of the search warrant as required by Rule 13.3;

"F. That the search warrant itself is defective, in that it is not dated by the judicial officer issuing the warrant as required by Rule 13.2(b)(i); the search is further void and violative of statutes, in that the officers conducting the search failed to prepare a written inventory and present the same to the accused in the time and manner prescribed by statute or by the order issued by this Court;

"G. That the Affidavit itself is faulty in that it states facts which are not true, and cannot be corroborated by any other person other than the affiant."

In addition, the defendant states that the seized firearm should be suppressed because Trooper Roberts' prior activity with respect to Kerry Hodge constituted entrapment, and because the warrant was not issued upon probable cause.

In his brief in support of the motion, the defendant only addresses the issue of whether the search was improper because the officers seized contraband other than that described in the warrant and cites in support three cases:

*Marron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *Go-Bart Importing Company v. United States,* 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1930); *United States v. Coots,* 196 F.Supp. 775 (E.D.Tenn.1961). It is clear, however, that *Marron* and *Go-Bart* have been greatly limited by subsequent Supreme Court decisions. *See, e. g., Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Accordingly, the Federal appellate courts have upheld the seizure of incriminating articles not described in a warrant when the articles were inadvertently discovered during the course of a valid search. *See, e. g., United States v. Carwell,* 491 F.2d 1334, 1336 (8th Cir.), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *Gurleski v. United States,* 405 F.2d 253, 257–260 (5th Cir. 1968), *cert. denied,* 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769 (1969); *Aron v. United States,* 382 F.2d 965, 973–974 (8th Cir. 1967).

**8.** Apparently, some courts have held that a state standard should be applied in determining the reasonableness of searches and seizures conducted by state officers. *See United States v. Williams,* 351 F.2d 475, 477 (6th Cir. 1965), *cert. denied,* 383 U.S. 917, 86 S.Ct. 910, 15 L.Ed.2d 671 (1966); *United States ex rel. Turco v. Dross,* 224 F.Supp. 142, 144 (S.D.N.Y.1963). These decisions are based on dicta by Justice Clark in *Ker* to the effect that "the lawfulness of arrests [by state police officers] for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution." 374 U.S. at 37, 83 S.Ct. at 1632. Since it is impossible to conceive of a situation where a state standard could be less stringent than the federal standard and not be violative of the United States Constitution, it would seem that Justice Clark's dicta is superfluous.

Nonetheless, even if a state standard was applied, the result in this case would be the

States ex rel. Dyton v. Ellingsworth, 306 F.Supp. 231 (D.Del.1969); United States ex rel. Manduchi v. Tracy, 233 F.Supp. 423 (E.D.Pa.1964), aff'd on other grounds, 350 F.2d 658 (3d Cir.), cert. denied, 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965). Such a standard is expressed in 18 U.S.C. § 3109.[9] See United States v. Bustamante-Gamez, 488 F.2d 4, 9 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). For, as Justice Brennan indicated in his opinion in Ker, supra, both the Fourth Amendment and 18 U.S.C. § 3109 were derived from the firmly established Anglo-American tradition that "the fundamental liberty of the individual includes protection against unannounced police entries." 374 U.S. at 47–53, 83 S.Ct. at 1636.[10] In applying that tradition vis-a-vis either the Fourth Amendment or § 3109, courts have consistently held that before officers enter upon private premises to conduct a search pursuant to a warrant,[11] they must make an announcement of their identity, authority and purpose for seeking entry unless there are exigent circumstances excusing their failure to do so.[12] E. g., Sabbath v. United States, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); United States v. Pratter, 465 F.2d 227 (7th Cir. 1972) (Stevens, C. J.); Keiningham v. United States, 109 U.S. App.D.C. 272, 287 F.2d 126 (1960); United States v. Doering, 384 F.Supp. 1307 (W.D. Mich.1974); United States v. Blank, 251

F.Supp. 166 (N.D.Ohio 1966); Monroe v. Pape, 221 F.Supp. 635 (N.D.Ill.1963). If the officers secure entry without complying with this requirement, evidence seized by them must be suppressed. United States v. McClard, 333 F.Supp. 158, 167 (E.D.Ark. 1971) (Henley, J.), aff'd mem. 462 F.2d 488 (8th Cir.), cert. denied, 409 U.S. 988, 93 S.Ct. 345, 34 L.Ed.2d 255 (1972).

Since it is clear that the officers in this case did not announce their identity and authority before they entered the defendant's premises, the only question remaining is whether exigent circumstances were present excusing the officers' failure to comply with the announcement requirement. In Ker, supra, Justice Brennan detailed such circumstances as follows:

" . . . (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted." 374 U.S. at 47, 83 S.Ct. at 1636.

Clearly, none of these circumstances were present in this case. There was no testimo-

same. See Ark.Const. Art. 2, § 15; Ark.Stat. Ann. § 43–414; Arkansas Rules of Criminal Procedure 13.3(b); Comment, The Federal Standard: The New State Law of Search and Seizure?, 19 Ark.L.Rev. 329, 351–52 (1966).

9. 18 U.S.C. § 3109 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

10. The historical basis of the Fourth Amendment and § 3109 has also been thoroughly canvassed by the Supreme Court in Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). See also Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456 (1949); Blakely, The Rule of Announcement and Unlawful Entry: Miller v. United

States and Ker v. California, 112 U.Pa.L.Rev. 499 (1964).

11. The fact that the police officers had a valid search warrant does not insulate them "from the necessity of reasonably conducting their search." United States ex rel. Manduchi v. Tracy, 350 F.2d 658, 660 (3d Cir.), cert. denied, 382 U.S. 943, 86 S.Ct. 390, 15 L.Ed.2d 353 (1965).

12. It should be noted that this Court is not holding that 18 U.S.C. § 3109 is directly applicable to the conduct of state police officers. Rather, the Court merely holds that the standard embodied in that statute is likewise a constitutional standard that governs whether a search and seizure is consistent with the Fourth Amendment guarantees of reasonableness. See United States v. Bustamante-Gamez, 488 F.2d 4, 9 (9th Cir. 1973), cert. denied, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974).

ny by any of the officers that there were persons inside the trailer who were in danger of bodily harm; nor was there any evidence that the persons within already knew of the officers' authority and purpose. *See, e. g., Sabbath v. United States, supra; Gilbert v. United States,* 366 F.2d 923, 931 (9th Cir. 1966); *United States ex rel. Ametrane v. Gable,* 276 F.Supp. 555, 557 (E.D. Pa.1967), *aff'd* 401 F.2d (3d Cir. 1968). *Compare United States ex rel. Dyton v. Ellingsworth, supra.* In fact, the record reveals the exact opposite: the officers knew neither the identity nor the number of people inside the dwelling before they entered; moreover, the occupants of the trailer realized that the five men in street clothes who charged into the trailer were police officers only *after* they had gained entrance. Finally, there was no evidence that the officers believed that destruction of evidence was being attempted. Though the property authorized to be seized by the warrant (i. e.—currency and marijuana) was susceptible to removal or destruction, such is not sufficient to excuse compliance with the announcement rule. *Cf. United States v. Doering,* 384 F.Supp. 1307 (W.D. Mich.1974). Rather, the officers must have a reasonable belief that evidence is *presently* being removed or destroyed. In short, there were no urgent circumstances in this case justifying the immediate action of a forceful entry without proper notice.

Having thus concluded that the entry into the defendant's trailer was not preceded by a constitutionally mandated announcement of identity, authority and purpose, and there being no exigent circumstances present which would excuse the lack of compliance with the announcement rule, this Court is compelled to hold that the officers' entry was improper; accordingly, "the search which followed that improper entry cannot be upheld even if the search would otherwise have been valid." *Keiningham v. United States,* 109 U.S.App.D.C. 272, 287 F.2d 126, 130 (1960).[13]

In so holding, the Court is aware that the announcement requirement may appear to be a rule without reason. But, addressing that same sentiment in *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), the Supreme Court stated:

"We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. . . . Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house. *Id.* at 313, 78 S.Ct. at 1197–98.[14]

Thus, the Fourth Amendment requires a certain course of conduct on the part of police officers even after they have obtained valid authorization to invade an individual's privacy. Regardless of how great the probable cause indicating guilt, every person must be given a reasonable opportunity to surrender his or her privacy voluntarily. *United States ex rel. Ametrane v. Gable,*

---

13. It is likewise well established that an illegal entry vitiates a subsequent seizure, even if the evidence was in plain view after the entry. *United States v. Bustamante-Gamez,* 488 F.2d 4, 7, n. 3 (9th Cir. 1973), *cert. denied,* 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974). *See also Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

14. "Compliance [with the announcement requirement] is also a safeguard for the police themselves who might be mistaken for prowlers and be shot down by a fearful householder." 357 U.S. at 313, n. 12, 78 S.Ct. at 1198.

*supra.*[15]  From the evidence introduced in this case, it is clear that the defendant was not provided that constitutionally mandated opportunity.  Therefore, the sawed-off shotgun which was seized by the officers must be suppressed.

Because of the disposition of the motion to suppress, the Government is unable to maintain its burden of proving the defendant's guilt.  A judgment of acquittal will therefore be entered.

---

**15.**  In *Gable,* Judge Body aptly stated that:

"[T]he *Ker* 'method of entry' requirements are analogous in purpose to the fourth amendment particularity requirements.  For example, a warrant must be founded on probable cause, *and* must describe the persons or things to be seized and the place to be searched with particularity.  Satisfaction of the probable cause requirement gives the police the authority to invade an individual's privacy, as it did in the case sub judice.  However, the particularity requirement governs police conduct after the police have entered the individual's zone of privacy; the particular description prevents a general exploratory search by limiting the officers' authority to search and seize.  As the particularity requirement governs police procedure *after* the police are in the zone of privacy, so the 'method of entry' requirements govern police procedure *as* they enter the zone of privacy."

276 F.Supp. at 559.