J-S20027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEMEIL MURPHY | : | |
| | : | |
| Appellant | : | No. 926 EDA 2022 |

Appeal from the Judgment of Sentence Entered November 22, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0006738-2019.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED DECEMBER 5, 2023**

Jemeil Murphy appeals from the judgment of sentence imposed for his conviction of persons not to possess firearms.  18 Pa.C.S.A. § 6105(a)(1).  He challenges the denial of his motion to suppress and alleges several trial errors.  We affirm the denial of suppression but remand for a new trial.

According to the Commonwealth's evidence, in the early evening of August 10, 2019, Philadelphia Police Officers Michelle Barker and Nathaniel Harper were patrolling East Allegheny Avenue in a marked car.  Officer Harper stopped the car to speak with Murphy, who was standing outside a store apparently smoking a marijuana "blunt," in violation of a city ordinance.  Officer Barker later testified that by the time the officers got to him, Murphy had dropped the blunt and stepped on it, rendering it unrecoverable.  Officer

_____

[*] Retired Senior Judge assigned to the Superior Court.

Barker also stated that Murphy put his hands down by his pockets. Officer Harper grabbed Murphy's hands, and Officer Barker saw a bulge in Murphy's pocket. She patted Murphy's pocket and recovered a 3.5-by-5-inch gun.

Relevant here, Murphy had at least one conviction that prevented him from legally possessing a firearm. Police charged Murphy with, *inter alia*, the Section 6105(a)(1) offense. The charge was held for court.

Before trial, the parties litigated the admissibility of certain evidence, including Murphy's criminal record and the history of homicides in the area where police stopped Murphy. The parties also moved for pretrial rulings on the admissibility of internal police misconduct investigations for the officers involved in the case.

Additionally, Murphy moved to suppress physical evidence, checking boxes to indicate that his arrest was illegal because "(a) he was arrested without probable cause[,] (b) he was subjected to a stop and frisk on less than reasonable suspicion[, and] (c) he was arrested without a lawfully issued warrant or other legal justification." Omnibus Motion, 11/4/19, at 1. He further alleged that he was searched without a warrant and without probable cause. *Id.*

The pretrial matters proceeded to hearings on February 19 and 21, 2020, respectively. Relevant here, the court ruled that the Commonwealth could introduce evidence that the location where the officers saw Murphy was a high-crime area but not that they were investigating a homicide. N.T., 2/19/20, at 32–25. Further, the prosecution could state that Murphy was

ineligible to possess a firearm under Section 6105 but could not identify Murphy's specific convictions. *Id.* at 33. At the suppression hearing, the court denied Murphy's motion to suppress the firearm recovered from his pocket. N.T., 2/21/20, at 62–63.

Murphy appeared for a jury trial beginning July 27, 2021. He objected to certain opening statements by the prosecutor:

> [The prosecutor]: . . . Members of the jury, thank you for serving on a jury because without jurors we can't make sure that people get fair trials. Without jurors, we the Commonwealth can't make sure that justice is done. Without jurors we can't keep our city safe, and members of the jury, that is what this case is about. It is about keeping our city safe. Because we live in a city with a violence problem, with a crime problem --
>
> [Defense counsel]: Your Honor, at this time I'm going to object.
>
> THE COURT: Counsel, move on from that.
>
> [The prosecutor]: Members of the jury, we live in a city where guns are a problem.
>
> [Defense counsel]: Your Honor, I object to this.
>
> THE COURT: Your objection is overruled.
>
> [The prosecutor]: We live in a city where guns are a problem and this case is about a gun. It's about a gun in the hands of that man, the defendant, on September 10, 20 -- August 10, 2019. You're going to hear that the reason we're here is because when Mr. Murphy made the decision to possess a gun he committed a crime. He committed a crime because you're going to hear later in this trial that in 2016 the defendant was convicted of a crime, a felony that prohibited him from having a gun.
>
> Now, members of the jury, we live in a state and in a country where people take very serious their right to have guns. Our laws allow for people to have guns. But no matter what your personal feelings may be about handguns, what's important to note is that because of how dangerous guns are, when people do certain

- 3 -

things they lose their right to have guns and Mr. Murphy lost the right to have a gun because of his 2016 conviction.

*     *     *

And if the defense tries to distract you, tries to get you chasing ghosts instead of thinking about the facts, remember the defense is only concerned with the security of one person, the defendant.

[Defense counsel]: Your Honor, at this point I'm going to object to this.

THE COURT: Counsel, it's opening statement.  I hear you.

Overruled.

[The prosecutor]: Again, counsel is only worried about the security of one person, the defendant.  Not the safety of everyone else.   We, the Commonwealth, will meet our burden today, members of the jury.  We will prove that Mr. Murphy did possess a gun in clear violation of the law.  Then I'll ask for your help in keeping the community safe and ask you to find him guilty.

N.T., 7/27/21, at 16–18, 22–23.

Trial proceeded over two days.  Officer Barker testified that the location she was patrolling was a high-crime area:

Q     Officer, could you briefly describe for the members of the jury the area of 1800 block of East Allegheny Avenue?

A     It's a high-crime area.

Q     What do you mean when you say high-crime area?

A     Narcotics and addicts, basically homicides, drinkers.

Q     I'm sorry.  What was the second word?

A     Drinkers, homicides, narcotics.

[Defense counsel]: Your Honor, I'm going to object to the description of the area having addicts and drinkers to it. . . . It's irrelevant.

THE COURT: Overruled.

- 4 -

*Id.* at 30. Likewise, Detective Brian Calabrese testified that the 1800 block of East Allegheny Avenue "is a high-crime area, lots of narcotics, firearms, shootings, robberies, so on and so forth." N.T., 7/29/21, at 31. And Officer Harper testified, over Murphy's objection, that in the area, "there's a lot going on. A lot of moving pieces. A lot of crimes. A lot of drug sales. A lot of drug use. Multiple shootings." *Id.* at 123.

The jury found Murphy guilty of persons not to possess firearms. On November 22, 2021, the trial court sentenced Murphy to 7 to 14 years of imprisonment. Murphy filed a timely post-sentence motion, which was denied by operation of law on April 4, 2022. Murphy timely appealed. Murphy, the suppression judge,[1] and the trial judge all complied with Pennsylvania Rule of Appellate Procedure 1925.

Murphy raises five issues for review:

1. Did not the court err in denying a motion to suppress evidence where the intrusions resulting in the recovery of a gun after a stop for marijuana smoking were not based on specific articulable objective facts showing that [Murphy] was armed and dangerous?

2. Did the trial court err and deny due process by permitting the prosecutor in his opening statement to repeatedly prejudicially appeal to the jury to focus on public safety concerns, while demeaning defense counsel?

3. Whether testimony elicited by the prosecutor several times that the defendant's arrest was in a high crime area, with many violent

---

[1] Because Murphy misidentified the suppression judge in his statement of errors complained of on appeal, we remanded for a supplemental opinion, which the Honorable Shanese I. Johnson provided on September 5, 2023.

crimes, was irrelevant, highly prejudicial, and in violation of due process rights?

4. Did not the trial court err and deny due process by refusing to give an instruction limiting the jury's consideration of [Murphy's] prior felony conviction to proof of the element of 18 Pa.C.S.[A.] § 6105, and cautioning it that this conviction must not be considered on the critical issue of whether [Murphy] possessed the firearm?

5. Was there not cumulative prejudicial error that denied a fair trial and due process of law?

Murphy's Brief at 3 (excess capitalization removed).

## 1. Suppression

Murphy first challenges the denial of his motion to suppress evidence. While not contesting the officers' ability to stop him for smoking marijuana, he argues that they did not have a constitutionally permissible basis for "the greater intrusions" that led them to recover the gun from his pocket. Specifically, Murphy argues that Officer Harper lacked reasonable suspicion that he was armed and dangerous to justify grabbing his hands. Murphy contends that this tainted Officer Barker's subsequent pat-down of the outside of his pocket. Even if it did not, Murphy maintains that Officer Barker merely seeing a bulge in his pocket did not provide reasonable suspicion for her to frisk him.

On appeal from the denial of a motion to suppress evidence, we review "whether the [suppression court's] factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Heidelberg**, 267 A.3d 492, 498–99 (Pa. Super. 2021)

(*en banc*) (quoting ***Commonwealth v. Bumbarger***, 231 A.3d 10, 15 (Pa. Super. 2020)). Our scope of review includes the record from the suppression hearing but not evidence introduced at trial. ***In re L.J.***, 79 A.3d 1073, 1086 (Pa. 2013).[2]

"The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the right of each individual to be let alone." ***Commonwealth v. Smith***, 285 A.3d 328, 332 (Pa. Super. 2022) (quoting ***Commonwealth v. By***, 812 A.2d 1250, 1254 (Pa. Super. 2002)). "In light of these provisions," we categorize citizen–police encounters into three types:

---

[2] Murphy submits this Court can also review trial evidence if it "was unavailable during the suppression hearing." Murphy's Brief at 22 n.4 (quoting ***In re L.J.***, 79 A.3d 1073, 1085 (Pa. 2013)). This exception applies when a court denies a pre-trial motion to suppress, but then "new and different" evidence arises at trial and requires suppression (possibly on a different basis). ***L.J.***, 79 A.3d at 1081–82 (comparing ***Commonwealth v. DeMichel***, 277 A.2d 159, 161–61 (Pa. 1971)). In such a case, it is the *trial court*, on the defendant's motion, that may reopen the suppression issue and consider additional evidence. ***Id.*** at 1084 (citing Pa.R.Crim.P. 581(J)), ***id.*** at 1088 n.17 (requiring an explicit motion to add to the suppression record with trial evidence, thus giving the trial court the opportunity to consider the new evidence outside the presence of the jury); ***see Commonwealth v. Yandamuri***, 159 A.3d 503, 516 n.13 (Pa. 2017) ("[***L.J.***] does not preclude a defendant from challenging a suppression ruling *at trial* based upon evidence that was unavailable when the suppression hearing took place." (emphasis added)).

Here, Murphy did not ask the trial court to reopen the suppression record and reconsider his motion to suppress in light of new evidence. Therefore, our scope of review is limited to the transcript of the suppression hearing.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Green*, 298 A.3d 1158, 1162–63 (Pa. Super. 2023) (quoting *Commonwealth v. Way*, 238 A.3d 515, 518–19 (Pa. Super. 2020)).

An investigative detention is "a seizure of a person," which requires police to "have a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Adams*, 205 A.3d 1195, 1200 (Pa. 2019) (citing *Brown v. Texas*, 443 U.S. 47, 51 (1979), and *Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000)). Reasonable suspicion to support an investigative detention depends on the totality of the circumstances ("the whole picture") at the time that the police seize the citizen. *In re D.M.*, 781 A.2d 1161, 1163, 1165 (Pa. 2001) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). "Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 1163 (quoting *Cortez*, 449 U.S. at 417–18).

To ensure safety while completing an investigative detention, police may "frisk" or pat down a person for weapons as recognized in *Terry v. Ohio*, 392 U.S. 1 (1968). *Interest of T.W.*, 261 A.3d 409, 416 (Pa. 2021). A *Terry* frisk must be supported by reasonable suspicion that the subject of the frisk is "armed and dangerous." *Id.* at 417 (quoting *Terry*, 392 U.S. at 30). This,

too, is assessed based on the totality of the circumstances at the time of the frisk. *Id.* at 423. The analysis is "guided by common sense concerns, giving preference to the safety of the officer during an encounter with a suspect where circumstances indicate that the suspect may have, or may be reaching for a weapon." *Commonwealth v. Cunningham*, 287 A.3d 1, 11 (Pa. Super. 2022) (quoting *Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa. Super. 2008)). A person merely possessing a concealed firearm in public is insufficient to support a reasonable suspicion that he is dangerous. *Commonwealth v. Hicks*, 208 A.3d 916, 947 (Pa. 2019).

In sum, the constitutional requirements for a police officer to detain an individual and pat him down for weapons are as follows:

> First, the investigatory stop must be lawful. That requirement is met in an on-the street encounter . . . where the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous.

*T.W.*, 261 A.3d at 423 (quoting *Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009)).

This framework was shown in a recent case involving an investigative detention and frisk for weapons. *Cunningham*, 287 A.3d 1. There, evidence established that two officers were driving and smelled burnt marijuana in an area with three men standing on the sidewalk. *Id.* at 4–5. The officers parked and approached the men, who crossed the street "as though trying to avoid the officers." *Id.* at 5. When the officers reached them, the men started

yelling and behaving aggressively. *Id.* One officer decided to frisk the men. *Id.* The defendant, Cunningham, followed the officer's directions to put his hands on a pole but kept moving around the pole. *Id.* at 5–6.

This Court held that the investigative detention and frisk for weapons were both constitutionally permissible. The police had reasonable suspicion that criminal activity was afoot based on the smell of marijuana and the men's evasive behavior. *Id.* at 10. They had reasonable suspicion that Cunningham was armed and dangerous because of the men's aggression and Cunningham moving around the pole. *Id.* at 11–12. It was therefore error to suppress the evidence obtained as a result of the stop and frisk. *Id.* at 12.

Here, the suppression court found that the police reasonably suspected that Murphy had been smoking marijuana in public. The court reasoned that Officer Barker saw a bulge in Murphy's pocket, which contributed to her reasonable suspicion that Murphy was armed and dangerous. N.T., 2/21/20, at 62–63. The suppression court explained that Officer Barker stopping Murphy and patting his pocket was permissible under the Constitution:

> Officer Barker personally observed [Murphy] smoking a cigar, smelled the emanating marijuana odor, and watched as [Murphy] extinguished his cigar as she and her partner approached— evidencing [Murphy's] consciousness of guilt. This interaction took place in a high crime area that Officer Barker regularly patrols, in which she has made numerous arrests and citations, including for marijuana possession. These facts gave rise to reasonable suspicion of [Murphy's] illegal marijuana use and permitted his stop by the officers. . . .
>
> During the instant stop, Officer Barker watched as [Murphy] reached for his pants pockets. Officer Harper, who could see [Murphy's] left pocket, grabbed [Murphy's] hands. Officer Barker

- 10 -

then turned and noticed a weapon-shaped bulge in [Murphy's] left pocket. She frisked the exterior pocket and felt the barrel and handle of a firearm, prompting her to reach in and remove the firearm from [Murphy's] pocket. The officers' direct observations, coupled with [Murphy's] reach, gave rise to reasonable suspicion that [Murphy was] armed and dangerous.

Opinion, 9/5/23, at 4–5. The suppression court also concluded that Officer Harper acted lawfully when he grabbed Murphy's hands:

Officers may reasonably restrain a person by means of physical force or other show of authority during a lawful investigatory stop. *See, e.g.*, *Commonwealth v. Guillespie*, 745 A.2d 654, 660–61 (Pa. Super. 2000) ([holding that, under the totality of the circumstances, handcuffing suspects "was merely part and parcel of ensuring the safe detaining of the individuals during the lawful *Terry* stop"]). [Murphy] was lawfully stopped by the officers on suspicion of drug violations. The hand restraint by Officer Harper was brief, minimally invasive, and occurred only after [Murphy] placed his hands on his front pockets. Furthermore, as the restraint was employed only to allow the officers to safely effectuate the frisk—a constitutional procedure which itself effects "to dispel a reasonable fear that the stopped suspect possesses a weapon which could be used to harm a police officer or the public"—it cannot be said to have violated the precepts of *Terry v. Ohio*. *Interest of T.W.*, 261 A.3d at 417 (citing *Terry*, 392 U.S. at 30).

*Id.* at 5.

We agree with the conclusions of the suppression court. Murphy does not challenge that police had reasonable suspicion to stop him based on suspected use of marijuana in public. Once the police stopped Murphy, they acted in furtherance of the investigative purpose of the stop. Officer Harper grabbing Murphy's hands was part of the investigative detention and did not need additional justification. Officer Barker patting Murphy's pocket was based on a reasonable suspicion that Murphy was armed and dangerous; she

saw him standing in a high-crime area, having destroyed the marijuana blunt, bring his hands towards his pockets, where there was a gun-sized bulge. As in **Cunningham**, **supra**, the circumstances surrounding the stop and the suspect's behavior allowed the police to check for weapons while continuing their investigation. Therefore, the suppression court did not err in denying Murphy's motion to suppress, and this issue fails.

## 2. Prosecutor's Statements

Murphy next challenges the trial court's overruling of his objections to the prosecutor's opening statements. He preserved objections to statements that the case was "about keeping our city safe," that "we live in a city with a violence problem, with a crime problem," that "we live in a city where guns are a problem," and to "remember the defense is only concerned with the security of one person, the defendant[, and not] the safety of everyone else." N.T., 7/27/21, at 16–18, 22–23. Murphy argues that the trial court's allowing of these statements improperly diverted the jury's attention from deciding the case and instead focused on feelings of community safety.

The Commonwealth concedes that the prosecutor's comments about the city's gun violence problem were improper and that Murphy is entitled to a new trial. It asserts that the prosecutor's statements created impermissible bias against Murphy and prevented the jury from reaching a verdict based on the admissible evidence.

The trial court disagrees that the challenged statements rose to the level of prosecutorial misconduct. Trial Court Opinion, 9/7/22, at 5. It suggests that any error was harmless because Murphy "unequivocally violated" Section 6105(a) by possessing a gun after being convicted of a disqualifying offense. *Id.* at 5–6.

Regarding harmless error, Murphy contends that the evidence was not overwhelming and instead relied on the jury finding the officers' testimony to be credible. He provides reasons why their credibility could be called into doubt, such as Officer Barker's inconsistency whether the gun was in Murphy's left or right pocket and Officer Harper's prior discipline over an improper property receipt. Murphy adds that the trial court sustaining an objection to his own opening statement and the prosecutor repeating the contested statements in closing both exacerbated the prejudicial effect of the ruling.

For a claim of prosecutorial misconduct, this Court reviews whether the trial court's ruling on the defendant's objections to a prosecutor's statements deprived the defendant of a fair trial. *Commonwealth v. Arrington*, 86 A.3d 831, 853 (Pa. 2014) (citing *Commonwealth v. Tedford*, 960 A.2d 1, 29 (Pa. 2008)). We will reverse and remand for a new trial only when the "unavoidable effect [of the statements] is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." *Id.* at 853 (quoting *Commonwealth v. Bryant*, 67 A.3d 716, 727 (Pa. 2013) (brackets omitted)).

A prosecutor has "reasonable latitude" in an opening statement, which should "apprise the jury of how the case will develop, its background[,] and what will be attempted to be proved." **Commonwealth v. Parker**, 919 A.2d 943, 950 (Pa. 2007) (citations omitted). However, it is impermissible to "encourage[] the jurors to shift their inquiry away from the case before them." **Commonwealth v. Cherry**, 378 A.2d 800, 804–05 (Pa. 1977). Our courts have therefore reversed for new trials after prosecutors invited jurors not to tolerate "shootings on the street like the wild west," **id.** at 805, or to transform the trial into a referendum on community safety, **Commonwealth v. Poplawski**, 852 A.2d 323, 328–29 (Pa. Super. 2004).

Here, the trial court repeatedly allowing the prosecution to reference Philadelphia's problems with guns, violence, and crime deprived Murphy of a fair trial. By framing the case in terms of city-wide problems, the prosecutor encouraged the jury to shift its inquiry from whether Murphy possessed a firearm to a call to "keep our community safe" by finding him guilty. N.T., 7/27/21, at 23. Further, the trial court letting the prosecutor tell the jury that defense counsel was worried only about Murphy's security, before defense counsel had spoken, impermissibly shifted the jury's focus from the facts of the case to an attack on the role of defense counsel. We conclude that these statements, given over objection, prejudiced the jury against Murphy and prevent the jurors from reaching a fair verdict. **Arrington**, **supra**.

Our inquiry does not end here because, in appropriate cases, this Court may assess *sua sponte* whether an error is harmless. **Commonwealth v.**

- 14 -

*Hamlett*, 234 A.3d 486 (Pa. 2020).  For this Court to find harmless error, we must be "convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978).  That is, "the error could not have contributed to the verdict.  Whenever there is a reasonable possibility that an error might have contributed to the conviction, the error is not harmless."  *Id.* at 164 (internal quotation marks omitted).  We may find an error to be harmless under three circumstances:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Jones*, 240 A.3d 881, 892 (Pa. 2020) (quoting *Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018)).

The trial court suggests that the third circumstance applies because Officer Barker testified that she observed a bulge in Murphy's pocket, which turned out to be a firearm.  Opinion, 9/7/22, at, 5–6.

Under the facts of this case, we do not find that the error was harmless.  Although it was undisputed that Murphy could not legally possess a firearm, the evidence linking him to the gun depended on the jury finding Officers Barker and Harper to be credible.  Murphy attempted at trial to discredit their narratives, including using Officer Barker's inconsistent statements and Officer Harper's prior misconduct in handling property records.  However, the

prejudicial effect of the error—shifting the jury's focus from Murphy's guilt to a broad concern for community safety—negated these attempts. Certainly, a fair jury could have found that Murphy possessed the gun. However, based on the trial court allowing the prosecutor to shift the jury's focus and to malign defense counsel (without allowing similar latitude for Murphy),[3] we cannot find beyond a reasonable doubt that the error was harmless. Therefore, we reverse Murphy's judgment of sentence and remand for a new trial.

We will address Murphy's other issues from trial mindful that they might arise again on remand. *See Commonwealth v. Ross*, 57 A.3d 85, 98 (Pa. Super. 2012) (*en banc*) (after vacating a judgment of sentence and remanding for new trial, addressing an evidentiary issue argued by the parties).

### 3. Nature of Area

Murphy next challenges the pretrial ruling that the Commonwealth could introduce that the incident occurred in a high-crime area. The prosecution elicited such testimony from three different witnesses. Murphy argues that this evidence is irrelevant at trial, where the only contested issue was whether he possessed a firearm, not whether police had reasonable suspicion to stop him. Even if the nature of the area was relevant, Murphy submits that the danger of unfair prejudice outweighed its probative value, because the prosecutors emphasized the high-crime nature of the area to the jury.

_____

[3] The trial court sustained the Commonwealth's objection to Murphy's theory of why the Commonwealth was prosecuting him. N.T., 7/21/21, at 24.

The Commonwealth responds that evidence that police stopped Murphy in a high-crime area was not unduly prejudicial. It emphasizes that it is not required to sanitize a trial and eliminate facts that are relevant to the natural development of the case.

The court ruling on Murphy's motion[4] explained that descriptions of the area were relevant for the jury to assess the totality of the circumstances surrounding the police encounter. Opinion, 7/18/22, at 3–4. It concluded that the high-crime nature of the block was not prejudicial because it was merely a factor in determining reasonable suspicion. *Id.* at 4.

This Court reviews an evidentiary ruling on a motion *in limine* for an abuse of discretion. *Frazer v. McEntire*, 265 A.3d 777, 783 (Pa. Super. 2021). We will find an abuse of discretion only where a court's "judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Gilbert*, 269 A.3d 601, 606 (Pa. Super. 2022) (quoting *Commonwealth v. Lekka*, 210 A.3d 343, 354 (Pa. Super. 2019)).

> Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. However, the trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

---

[4] Judge Johnson ruled on the motions *in limine* in this case.

wasting time, or needlessly presenting cumulative evidence."
Pa.R.E. 403.

*Commonwealth v. Harrington*, 262 A.3d 639, 645 (Pa. Super. 2021).

Notably, the definition of relevance requires that a "fact is of consequence in determining the action," not that a fact must be an element of the offense for which the defendant is being tried. Therefore, courts have long held evidence to be relevant if it establishes another material fact, such as the history of the case or a motive. *See, e.g.*, *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (providing the history of *res gestae* evidence, which can be relevant to explain the course of events in a criminal investigation); *Commonwealth v. Ward*, 605 A.2d 796, 797 (Pa. 1992) ("[A]lthough motive is not an essential element of the crime, it is always relevant and admissible."). A trial court is not required to sanitize the trial by removing such evidence. *Commonwealth v. Ganjeh*, 300 A.3d 1082 (Pa. Super. 2023) (citing *Hairston*, 84 A.3d at 666).

A limited number of cases address the relevance of an area being known for crime. In *Commonwealth v. Middleton*, 409 A.2d 41 (Pa. Super. 1979), Philadelphia police officers posed as elderly ladies to catch potential muggers. *Id.* at 42. The officers testified that they did so in a "high crime area," and the trial court instructed the jurors to strike it from their memory. *Id.* at 43. This Court held that although the testimony was irrelevant, it was not so prejudicial as to warrant a new trial. *Id.* (citing *Commonwealth v. Dalahan*, 396 A.2d 1340 (Pa. Super. 1979)). "We can see no reasonable inferences to

be drawn that appellant was somehow guilty merely because he was in a 'high crime area.'" *Id.*

Here, the nature of the area was relevant. The Commonwealth could establish that police approached Murphy on a high-crime block of the street as part of the course of events in their investigation. *Hairston*, *supra*. Although the jury could not determine whether the police had reasonable suspicion to stop Murphy, *see* Pa.R.Crim.P. 581(J), they could consider why the officers approached him, which included the nature of the area. This was probative given Murphy's alternative theory as to why the police chose to stop him. Moreover, presence in a high-crime area can provide a motive to carry a firearm in self-defense. *Ward*, *supra*. As in *Middleton*, it would not be reasonable to infer that Murphy was guilty merely because he was in an area where other people had committed crimes, nor was such an argument presented to the jury. Therefore, the court ruling on the motions *in limine* did not abuse its discretion by allowing evidence of the nature of the area.

### 4. Limiting Instruction

Murphy next challenges the denial of his request for an instruction to limit the jury's consideration of his 2016 conviction. The parties stipulated to this conviction to establish that Murphy was legally prohibited from possessing a firearm. Murphy asked the trial court to instruct the jury not to consider this conviction as evidence of his bad character or propensity to commit crime.

Murphy preserved this issue.  N.T., 7/29/21, at 184, 186.[5]  We review the denial of a requested jury instruction for an abuse of discretion or an error of law.  ***Commonwealth v. Cannavo***, 199 A.3d 1282, 1286 (Pa. Super. 2018) (citing ***Commonwealth v. Galvin***, 985 A.2d 783, 788–89 (Pa. 2009)).

In Pennsylvania, in a prosecution under Section 6105(a)(1), the Commonwealth is not required to accept a stipulation that a defendant is disqualified from possessing a firearm; it may identify the specific prior offense that disqualifies the defendant.  ***Commonwealth v. Jemison***, 98 A.3d 1254, 1261 (Pa. 2014) (following ***Commonwealth v. Stanley***, 446 A.2d 583 (Pa. 1982)).  In so holding, our Supreme Court noted that the possibility of unfair prejudice could be mitigated with a cautionary instruction, "directing [the jury] to consider the defendant's prior offense only as evidence to establish the

_____

[5] The trial court instructed the jury as to the elements of persons not to possess a firearm:

> To find the defendant guilty of this offense, you must find that the following elements have been proven beyond a reasonable doubt:
>
> One, that the defendant was a person prohibited by law from possessing, using, or controlling a firearm.  To be prohibited, the Commonwealth must show that the defendant at the time of this conduct had been convicted of an enumerated felony offense under Section 6105.  In this case, it was agreed by all parties that the defendant was convicted of a felony in 2016.  He was prohibited from possessing a firearm because of that conviction.
>
> Two, that the defendant on a date more than 60 days from the time he became a person prohibited by law of possessing, using, or controlling a firearm, knowing[ly] possessed, or used a firearm.

N.T., 7/29/21, at 177.

prior conviction element of the [Section] 6105 charge, not as evidence of the defendant's bad character or propensity to commit crime." ***Id.*** at 1262. It noted that when evidence of a defendant's prior crimes is admissible for a relevant purpose, as in a Section 6105 prosecution, "**the defendant is entitled upon request to a limiting jury instruction**, which the law presumes the jury will follow." ***Id.*** at 1263 (citing ***Tedford***, 960 A.2d at 37) (emphasis added).

Here, the trial court ran contrary to ***Jemison*** by refusing a requested limiting instruction. Murphy is entitled to relief on this issue, and if requested on retrial, the trial court shall provide such instruction.

## 5. Conclusion

Based on our treatment of the other issues, we do not reach Murphy's final issue concerning cumulative prejudicial error. We will vacate the judgment of sentence and remand for a new trial.

Order denying suppression affirmed. Order *in limine* affirmed. Judgment of sentence vacated. Case remanded for new trial. Jurisdiction relinquished.

Judge Colins joins. Judge Dubow issues a Concurring Statement.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>12/5/2023</u>